1
2
3
4
5

**SEYFARTH SHAW LLP**
Leo Q. Li (SBN 293539)
lli@seyfarth.com
Sofya Perelshteyn (SBN 320931)
sperelshteyn@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:    (310) 277-7200
Facsimile:    (310) 201-5219

6
7
8
9

Eric E. Hill (SBN 173247)
ehill@seyfarth.com
Ping Wang (SBN 351428)
pwang@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105-2930
Telephone:    (415) 397-2823
Facsimile:    (415) 397-8549

10
11

Attorneys for Defendants

12

Kimpton Hotel & Restaurant Group, LLC;
KHRG Canary LLC

13

14

15

16

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

17
18
19

WAVERLY LATOURETTE as an individual and
on behalf of all other similarly situated Class
Members,

20

                    Plaintiff,

21

        v.

22
23
24

KIMPTON HOTEL & RESTAURANT GROUP,
LLC, a Delaware Limited Liability Company;
KHRG CANARY LLC, a Delaware Limited
Liability Company; and DOES 1-100, inclusive,

                    Defendants.

| | |
|---|---|

**CLASS ACTION**

Case No. _____

**DEFENDANTS' NOTICE OF REMOVAL
TO UNITED STATES DISTRICT COURT**

[San Francisco County Superior Court Case
No. CGC-24-613426]

[*Filed concurrently with:*
*1. Civil Cover Sheet;*
*2. Certificate of Interested Entities;*
*3. Corporate Disclosure Statement;*
*4. Declaration of Will McKnight;*
*5. Proof of Service]*

Complaint Filed: March 26, 2024
Trial Date:  None Set

25
26
27
28

310546573v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Kimpton Hotel & Restaurant Group, LLC ("Kimpton") and Defendant KHRG Canary LLC ("Canary") (collectively "Defendants") file this Notice of Removal, asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. §§ 1332(d), 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California for the County of San Francisco, to the United States District Court for the Northern District of California. This Court has original jurisdiction over the action pursuant to CAFA for the following reasons:

## I.   BACKGROUND

1.      On March 26, 2024, Plaintiff Waverly LaTourette ("Plaintiff") filed a class and representative action complaint in the Superior Court of California for the County of San Francisco, titled "*Waverly LaTourette v. Kimpton Hotel & Restaurant Group, LLC, a Delaware Limited Company; KHRG CANARY LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive,*" Case No. CGC-24-613426 ("Complaint"). The Complaint asserts eight causes of action for (1) recovery of unpaid minimum wages and liquidated damages; (2) recovery of unpaid overtime wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to produce records in violation of Labor Code section 226; (6) failure to timely pay all wages due upon separation of employment; (7) failure to reimburse business expenses; and (8) unfair competition.

2.      On April 17, 2024, Defendants' counsel accepted service of a copy of the Summons and Complaint, Civil Case Cover Sheet, and Alternative Dispute Resolution Information Package by signing and returning a Notice and Acknowledgment of Receipt. A true and correct copy of these documents served on Defendants is attached hereto as **Exhibit A**.

3.      On May 13, 2024, Defendants filed their Answer to Plaintiff's Unverified Class and Representative Action Complaint in the Superior Court of California for the County of San Francisco. A true and correct copy of the Answer filed to Plaintiff's Complaint is attached hereto as **Exhibit B**.

4.      Defendants have not filed or received any other pleadings or papers, other than the pleadings described as Exhibits A and B, in this action prior to filing this Notice of Removal.

1

## II.     TIMELINESS OF REMOVAL

5.      Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons—"The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant . . . ." 28 U.S.C. §1446(b)(1).

6.      The service of process which triggers the 30-day period to remove is governed by state law.  *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) ("When a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law."); *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

7.      When a defendant accepts service by notice and acknowledgement of receipt of the complaint, the 30-day period to remove is not triggered until a defendant executes and returns the acknowledgement of service.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (removal period is not triggered "by mere receipt of the complaint unattended by any formal service"); *Langston v. 20/20 Companies, Inc.*, 2014 WL 5335734, at *3 (C.D. Cal. Oct. 17, 2014) ("[S]ervice by mail is not complete until the recipient signs the acknowledgement of receipt and thereafter returns it to the sender … California courts have clarified that [Cal. Code Civ. Proc. § 415.30] 'expressly predicates the efficacy of such service upon the execution and return of an acknowledgment of service….'") (quoting *Thierfeldt v. Marin Hosp. Dist.*, 35 Cal. App.3d 186, 199 (1973)).

8.      Here, service of the Summons and Complaint was deemed complete on April 17, 2024, when Defendants executed and returned the Notice and Acknowledgment of Receipt of the Complaint. Defendants' Notice of Removal is timely because they filed the Notice of Removal within 30 days of service of the Summons and Complaint on April 17, 2024.

## III.     REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

9.      Under the CAFA, district courts have original jurisdiction for class actions "if [1] the class has more than 100 members, [2] the parties are minimally diverse, and [3] the amount in

controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens* ("*Dart*"), 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).  As set forth below, each of these three requirements are met and thus this action is properly removable, pursuant to 28 U.S.C. § 1441(a).

**A.    The Class Action Includes Approximately 2,999 Potential Class Members.**

10.    A removal under CAFA requires at least 100 members in a proposed class. *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction does not apply to any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

11.    Here, Plaintiff seeks to represent "[a]ll current and former non-exempt employees" who worked at any of these hotels within the four-year statute of limitations: 1) Sawyer Hotel, Sacramento; 2) Enso Hotel, San Francisco; 3) Kimpton Canary Hotel, Santa Barbara; 4) Rowan Palm Springs Hotel, Palm Springs; 5) Alma Hotel, San Francisco; 6) Palomar Los Angeles Beverly Hills Hotel, Los Angeles; 7) Kimpton La Peer Hotel, West Hollywood; 8) Hotel Wilshire, Los Angeles; 9) Everly Hotel, Los Angeles; 10) Alton Hotel, San Francisco; and 11) Kimpton Shorebreak Resort, Huntington Beach. (Ex. A—Complaint, ¶ 17.)

12.    Based on the filing date of the Complaint on March 26, 2024, the proposed class period covers the time period of **March 26, 2020 to the present**. Based on the allegations of the operative Complaint, **there are approximately 2,999 current and former non-exempt employees in the proposed class between March 26, 2020 and the present**. (Declaration of Will McKnight ("McKnight Declaration"), ¶ 6.) Additionally, Plaintiff explicitly conceded that she is "informed and believes the Class consists of at least 100 individuals." (Ex. A—Complaint, ¶ 17.) Thus, there is no question that the size of the proposed class exceeds the minimum threshold of 100 members under CAFA.

**B.    Plaintiff And Defendants Are Minimally Diverse.**

13.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction—that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant.").

DEFENDANTS' NOTICE OF REMOVAL

310546573v.2

14.    A party's citizenship is determined at the time the lawsuit was filed. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action [was] brought.").

15.    In the instant case, Plaintiff is a citizen of a state (California) that is different from the states of citizenship of Defendant Kimpton (Delaware and Georgia).

### 1.    Plaintiff Is A Citizen Of California.

16.    For diversity purposes, a natural person's state citizenship is determined by that person's domicile—*i.e.*, one's "permanent home, where [that person] resides with the intention to remain or to which [that person] intends to return." *Kantor v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed").

17.    In this case, Plaintiff explicitly concedes that she "is, at all relevant times, was an individual domiciled in the State of California and a citizen of the State of California." (Ex. A— Complaint, ¶ 2.)

18.    Additionally, Plaintiff provided Defendants with her home address during the course of her employment for purposes of her personnel files, payroll checks, and tax withholdings. (McKnight Declaration, ¶ 4.) Defendants' review of Plaintiff's personnel files reveal that throughout the period of her employment, Plaintiff was a resident of California. (*Id.*)

19.    Plaintiff's intent to remain domiciled in California also is evident from the fact that she brought this lawsuit against Defendants in the Superior Court of the State of California for the County of San Francisco. Therefore, Plaintiff was at all relevant times, and still is, a citizen and resident of the State of California.

### 2.    Defendant Kimpton Is Not A Citizen Of California, But Rather Is A Citizen of Delaware and Georgia.

20.    Defendant Kimpton is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. § 1332(c)(1).

4

21.     Ordinarily, for purposes of diversity jurisdiction, an unincorporated association has the citizenships of all of its members. *See Johnson v. Columbia Props. Anchorage, LP.*, 437 F.3d 894, 899 (9th Cir. 2006).  However, the "exception to this rule is for class actions brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(10)." *Moss v. Infinity Ins. Co.*, 2015 WL 7351395, at *2 (N.D. Cal. Nov. 20, 2015). CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes. *See Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) (A. Kleinfeld, concurring) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes ….").

22.     Rather, for purposes of diversity jurisdiction under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10).  *See also Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) ("Certain aspects of CAFA, it is true, evidence Congress's intent that the district courts' jurisdiction vis-a-vis certain kinds of actions be broadened rather than restricted. For example … under § 1332(d)(10), 'an unincorporated association [is] ... deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized,' which departs from the rule that frequently destroys diversity jurisdiction, that 'a limited partnership's [or unincorporated association's] citizenship for diversity purposes can be determined only by reference to all of the entity's members'").

23.     Accordingly, for purposes of diversity jurisdiction "[u]nder CAFA, a limited liability company is 'deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.'" *Clemons v. Element Materials Tech. Huntington Beach LLC*, 2022 WL 1203096, at *2 (C.D. Cal. Apr. 22, 2022); *see also Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019) ("the Court finds that for purposes of CAFA, Defendant [an LLC] is 'a citizen of the State where it has its principal place of business and the State under whose laws it is organized.'"); *Kim v. Shellpoint Partners, LLC*, 2016 WL 1241541, at *5 (S.D. Cal. Mar. 30, 2016) ("For CAFA's purposes, [Shellpoint Partners, LLC] is a citizen both of the state where it has its

DEFENDANTS' NOTICE OF REMOVAL

310546573v.2

principal place of business and the state under whose laws it is organized. *See* 28 U.S.C. § 1332(d)(10).").

24.    Here, Defendant Kimpton is now, and ever since this action commenced has been, a Delaware limited liability company, organized under the laws of the State of Delaware.  (McKnight Declaration, ¶ 5.)  Thus, for purposes of diversity jurisdiction, Defendant Kimpton is a citizen of Delaware.

25.    Further, as shown below, Defendant Kimpton's principal place of business is, and has been at all times since this action commenced, located in the State of Georgia.  (McKnight Declaration, ¶ 5.)  Thus, for purposes of diversity jurisdiction, Defendant Kimpton is also a citizen of Georgia.

26.    The United States Supreme Court held that when determining a legal entity's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010).  Under the "nerve center" test, the "principal place of business" means the headquarters where a legal entity's high-level officers direct, control and coordinate its activities on a day-to-day basis.  *Id*. at 92–93 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092–93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

27.    Under the "nerve center" test, Georgia emerges as Kimpton's principal place of business. Kimpton's headquarters are located in Atlanta, Georgia, where Kimpton's high-level officers direct, control, and coordinate its activities. (McKnight Declaration, ¶ 5.)  Kimpton's high-level corporate officers maintain offices in Atlanta, and many of Kimpton's corporate-level functions are performed in the Atlanta office. (*Id.*) Additionally, many of Kimpton's executive and administrative functions, including corporate finance and accounting, are directed from the Atlanta headquarters. (*Id.*)

28.    Therefore, for purposes of diversity of citizenship, Defendant Kimpton is, and has been at all times since this action commenced, a citizen of the State of Delaware and the State of Georgia. 28 U.S.C. § 1332(c)(1).

DEFENDANTS' NOTICE OF REMOVAL

29.    Because Plaintiff is a citizen of California and Defendant Kimpton is a citizen of Delaware and Georgia, minimal diversity exists for purposes of CAFA.

### 3.    The Citizenship Of Doe Defendants Should Be Disregarded.

30.    The other defendants named in the Complaint are merely fictitious parties identified as "DOES 1-100" whose citizenship shall be disregarded for purposes of this removal. 28 U.S.C. § 1441(b) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"); *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) ("[T]he unknown defendants sued as 'Does' need not be joined in a removal petition.") (citing *Ronson Art Metal Works, Inc. v. Hilton Lite Corp.*, 111 F.Supp. 691, 694 (N.D. Cal. 1953)).

31.    Thus, the existence of "DOES 1-100" in the Complaint does not deprive this Court of jurisdiction. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679–80 n.4 (9th Cir. 2006) (rule applied in CAFA removal; "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

### C.    The Amount In Controversy Exceeds The $5 Million Statutory Threshold Under CAFA.

32.    CAFA requires that the amount in controversy exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6).

33.    In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.

34.     The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id.* at 42–43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

35.     Here, even if the Complaint does not allege an amount in controversy, the removing defendant only needs to prove by a **preponderance of the evidence** that the amount in controversy exceeds that minimum.  *Ramos v. MOOG Inc.*, 2020 WL 969023, at *3 (C.D. Cal. Feb. 27, 2020) (applying preponderance of evidence standard to deny motion to remand where plaintiff's class action complaint makes conclusory allegation that the "aggregate claim is under five million dollars"); *see also Dart*, 135 S. Ct. at 553–54 ("Removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the jurisdictional threshold") (emphasis added, internal alterations omitted); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."); *accord Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged.  In light of *Standard Fire*, this rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million.") (citations omitted); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (holding that under the "preponderance of the evidence" standard, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

310546573v.2

36.     To satisfy this standard, the "defendants' notice of removal need include **only a plausible allegation** that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554 (emphasis added); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount'") (emphasis added).

37.     The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

38.     For purposes of ascertaining the amount in controversy, "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

39.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the

DEFENDANTS' NOTICE OF REMOVAL

removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

40.     If a plaintiff asserts statutory violations, **the court must assume that the violation rate is 100%** unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform . . . policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

41.     Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See Franke v.*

310546573v.2

*Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio*, *LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

42.     In this case, Plaintiff seeks to recover, on behalf of herself and the alleged class, alleged unpaid minimum wages, overtime wages, failure to provide meal periods, failure to provide rest periods, failure to produce records in violation of Labor Code section 226, failure to timely pay all wages due upon separation of employment, failure to reimburse business expenses, and unfair competition. (Ex. A—Complaint at ¶¶ 89-143.)  Plaintiff also seeks attorneys' fees and costs. (Ex. A—Prayer For Relief.)

43.     As set forth below, the alleged amount in controversy, implicated by the classwide allegations, exceeds **$8 Million**, solely based on two claims asserted in this lawsuit—claims under Labor

Code §§ 226 and 203. All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and solely for purposes of this Notice of Removal, that liability is established.

### 1. The Fifth Cause Of Action For Failure to Produce Records In Violation of Labor Code Section 226: The Amount In Controversy Exceeds $1 Million.

44.     For Plaintiff's fifth cause of action, Plaintiff alleges that "Defendants have a uniform policy and practice of failing to produce or make available a current or former employee's personnel records and/or payroll records when requested pursuant to Labor Code section 226 and/or the appliable Wage Order." (Ex. A—Complaint, ¶ 124.)

45.     As a result, Plaintiff alleges that "Plaintiff and Class Members are therefore each entitled to recover a $750.00 penalty from Defendants …." (Ex. A—Complaint, at 125.)

46.     Labor Code §226(f) provides a $750 penalty for the failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth in subdivision (c). Cal. Labor Code §226 ("(c) An employer who receives a written or oral request to inspect or receive a copy of records pursuant to subdivision (b) pertaining to a current or former employee shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request." "(f) A failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth in subdivision (c) entitles the current or former employee or the Labor Commissioner to recover a seven-hundred-fifty-dollar ($750) penalty from the employer."). The statute of limitations for recovery of penalties under Labor Code § 226 is one year. *Caliber Bodyworks, Inc. v. Sup. Ct*., 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a). Because Plaintiff filed his Complaint on March 26, 2024, the statutory period for the claim under California Labor Code § 226 runs from **March 26, 2023 to the present**.

47.     There were 1,554 potential class members during the limitations period of March 26, 2023 to May 9, 2024. (McKnight Declaration, ¶ 8.) Based on Plaintiff's allegation that she and the proposed class members each entitled to recover $750 from Defendants, the amount in controversy on this claim would equal no less than **$ 1,165,500** [$750 x 1,554 employees].

**2.    The Sixth Cause Of Action For Failure to Timely Pay Wages Due Upon Separation of Employment: The Amount In Controversy Exceeds $5 Million.**

48.    For Plaintiff's sixth cause of action, she alleges that "Defendants failed and continue to fail to timely pay final wages to Plaintiff and Class Members upon separation of employment in violation of Labor Code section 201-202." (Ex. A—Complaint, ¶ 129.) Plaintiff also alleges that the "final paychecks … do not include all wages owed as they are devoid of, including but not limited to, all owed minimum wages, overtime wages, premium wages, vacation pay, and all owed sick leave and/or paid time off wages at the property accrued rate." (Ex. A—Complaint, ¶ 129.)

49.    As a result, Plaintiff alleges that "Plaintiff and the Class Members who are no longer employed by Defendants are entitled to recover waiting time penalties of up to 30 days' pay …." (Ex. A—Complaint, ¶ 130.)

50.    Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

51.    The statute of limitations period for California Labor Code § 203 penalties extends back three years from the date of filing of the complaint, or **March 26, 2021**. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

52.    Here, during the three-year limitations period, between March 26, 2021 and May 9, 2024, there were approximately 1,531 potential class members who previously worked at one of the hotels identified in the operative Complaint. (McKnight Declaration, ¶ 7.) Using Plaintiff's last hourly rate of $15.50, the amount in controversy for the claim of waiting time penalties would be approximately **$5,695,320.** [($15.50/hour x 8 hours x 30 days) x 1,531 potential class members].

13

310546573v.2

53.     It is appropriate to use the maximum 30 days to calculate the amount in controversy for the waiting time penalties. *See, e.g.*, *Tajonar v. Echosphere, LLC*, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding defendant's "calculations [we]re reasonable and consistent with [plaintiff's] own allegations" that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations.").

### 3.    Attorneys' Fees: The Amount In Controversy Exceeds $1 Million.

54.     Plaintiff also seeks attorneys' fees.  (Ex. A—Complaint, ¶¶ 95, 102, 111, 120, 125, 130, 137; Prayer For Relief.)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is "mandatory or discretionary"); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010–11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

55.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010–11); *Muniz*, 2007 WL 1302504 at *2 (attorneys' fees "are also properly considered in ascertaining the amount in controversy" for purposes of removal under CAFA).

56.     The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is

14

DEFENDANTS' NOTICE OF REMOVAL

determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

57.    Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

58.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g., Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]he 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78–84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16–18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

59.    Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$1,715,205** in this case, which is 25% of

DEFENDANTS' NOTICE OF REMOVAL

the amount in controversy for the claims alleged in the Complaint and discussed above—**$1,165,500** (alleged failure to produce records claim) + **$5,695,320** (alleged waiting time penalties).

        **4.**      **The Total Aggregate Amount In Controversy Exceeds $5 Million.**

    60.    Although Defendant denies Plaintiff's allegations that she or the potential class are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the potential class for all asserted claims is approximately **$8,576,025**, exclusive of the amount in controversy for the alleged underpayment of overtime, meal premium, rest premium, and sick pay wages:

| Cause of Action | Amount in Controversy Based on the Allegations of the Complaint |
|---|---|
| Failure to Produce Records | **$1,165,500** |
| Waiting Time Penalties | **$5,695,320** |
| Attorneys' Fees | **$1,715,205**<br>(based on 25% of the amount in controversy of **$6,860,820**, on the above claims) |
| **Total** | **$8,576,025** |

    61.    Although Defendants deny Plaintiff's allegations that she or the potential class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and conservative estimates based on those allegations, the total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

    62.    Because both minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

    63.    To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a). 28 U.S.C. §§ 1367(a) (providing that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

## IV.    VENUE

64.    Venue lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c). This action originally was brought in the Superior Court of the State of California for the County of San Francisco, which is located within the Northern District of California. 28 U.S.C. § 84(c). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## V.    NOTICE TO STATE COURT AND TO PLAINTIFF

65.    Defendants will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California for the County of San Francisco. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of San Francisco as required under 28 U.S.C. § 1446(d).

## VI.    PRAYER FOR REMOVAL

66.    WHEREFORE, Defendants pray that this civil action be removed from Superior Court of the State of California for the County of San Francisco to the United States District Court for the Northern District of California.

DATED: May 15, 2024                    SEYFARTH SHAW LLP


By:  */s/ Leo Q. Li*
       Leo Q. Li
       Eric E. Hill
       Sofya Perelshteyn
       Ping Wang

       Attorneys for Defendants
       KIMPTON HOTEL & RESTAURANT
       GROUP, LLC; KHRG CANARY LLC

310546573v.2

# EXHIBIT A

EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
KIMPTON HOTEL & RESTAURANT GROUP, LLC, a Delaware Limited Liability Company; KHRG CANARY LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
WAVERLY LATOURETTE, as an individual and on behalf of all other similarly situated Class Members

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado.  Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of San Francisco - Civic Center Courthouse
400 McAllister St., San Francisco, CA 94102

**CASE NUMBER:**
*(Número del Caso):*
**CGC-24-613426**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JAMIE K. SERB, CROSNER LEGAL, PC 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210
Tel: (866) 276-7637

DATE: **03/28/2024**        Clerk, by **DAEJA ROGERS**                    , Deputy
*(Fecha)*                    *(Secretario)*                                *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1   JAMIE K. SERB, ESQ. (SBN 289601)
    jamie@crosnerlegal.com
2   BRANDON BROUILLETTE, ESQ. (SBN 273156)
    bbrouillette@crosnerlegal.com
3   ZACHARY M. CROSNER, ESQ. (SBN 272295)
    zach@crosnerlegal.com
4   **CROSNER LEGAL, PC**
    9440 Santa Monica Blvd. Suite 301
5   Beverly Hills, CA 90210
    Tel: (866) 276-7637
6   Fax: (310) 510-6429
7
8   Attorneys for Plaintiff WAVERLY LATOURETTE
    As an individual and on behalf of all other similarly
9   situated Class Members

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**03/26/2024**
**Clerk of the Court**
BY: DAEJA ROGERS
Deputy Clerk

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                      **COUNTY OF SAN FRANCISCO**

12  WAVERLY    LATOURETTE,    as    an          Case No.:        **CGC-24-613426**
    individual  and  on  behalf  of  all  other
13  similarly situated Class Members,

14                                                **CLASS ACTION COMPLAINT FOR:**
            Plaintiff,
15                                                1.  **Recovery of Unpaid Minimum Wages**
                                                      **and Liquidated Damages**
16  v.
                                                  2.  **Recovery of Unpaid Overtime Wages**
17  KIMPTON HOTEL & RESTAURANT
    GROUP, LLC, a Delaware Limited               3.  **Failure to Provide Meal Periods or**
18  Liability Company; KHRG CANARY                   **Compensation in Lieu Thereof**
    LLC, a Delaware Limited Liability
19  Company; and DOES 1-100, inclusive,          4.  **Failure to Provide Rest Periods or**
                                                      **Compensation in Lieu Thereof**
20
            Defendants.                           5.  **Failure to Produce Records in Violation**
21                                                    **of Labor Code Section 226**

22                                               6.  **Failure to Timely Pay All Wages Due**
                                                      **Upon Separation of Employment**
23
                                                  7.  **Failure to Reimburse Business Expenses**
24                                                    *and*

25                                               8.  **Unfair Competition**

26
                                                  **DEMAND FOR JURY TRIAL**
27

28

                                          1

Plaintiff, WAVERLY LATOURETTE, ("PLAINTIFF"), as an individual and on behalf of all other similarly situated Class Members (as defined below), hereby files this Complaint against Defendants KIMPTON HOTEL & RESTAURANT GROUP, LLC, a Delaware Limited Liability Company; KHRG CANARY LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive, (collectively referred to herein as "DEFENDANTS"). PLAINTIFF is informed and believes and thereon alleges as follows:

**JURISDICTION AND VENUE**

1.     This court possesses original subject matter jurisdiction over this matter. Venue is proper in the County of San Francisco pursuant to California Code of Civil Procedure section 395.5 because DEFENDANTS transact business within this judicial district, DEFENDANTS both maintain a principal place of business in this judicial district.  Venue is also proper pursuant to section 393 of the California Code of Civil Procedure because the cause, or some part of the cause, arose in the County of San Francisco.

**THE PARTIES**

2.     PLAINTIFF is, and at all relevant times, was an individual domiciled in the State of California and a citizen of the State of California.

3.     PLAINTIFF is a former employee of DEFENDANTS. PLAINTIFF worked for DEFENDANTS from in or around March 2022 through in or around the end of January 2023 as a non-exempt employee with a job title of bartender and/or similar job title(s) and/or position(s). DEFENDANTS assigned PLAINTIFF to work at DEFENDANTS' facilities located in Santa Barbara, California, including but not limited to, at DEFENDANTS' restaurants and/or bars and/or other facilities located within one of DEFENDANTS' hotel(s) and/or resort(s) in Santa Barbara, California, which operates under the name(s) Kimpton Canary Hotel and/or Kimpton Canary Hotel Santa Barbara.

4.     Defendant KIMPTON HOTEL & RESTAURANT GROUP, LLC is a Delaware Limited Liability Company that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California.

5.     Defendant KHRG CANARY LLC, a Delaware Limited Liability Company that, at

2

all relevant times, was authorized to do business within the State of California and is doing business in the State of California.

6.    DEFENDANTS own, operate, manage and/or staff its employees to work at the hotels, resorts, restaurants and/or other facilities and/or other location(s) in California, including but not limited to, hotels and/or resorts and/or restaurants and/or other facilities located in Santa Barbara, California.  Based on information and belief, Kimpton operates multiple hotels, resorts and/or other facilities including but not limited to, at least ten (10) hotels, resorts, restaurants and/or other facilities and/or other locations in California, including but not limited to, hotels, resorts, restaurants and/or facilities and/or other locations operating under including but not limited to the following names in including but not limited to, the following California cities:   Kimpton Shorebreak Resort in Huntington Beach, California; Kimpton Everly Hotel in Los Angeles, California; Kimpton La Peer Hotel in West Hollywood, California; Kimpton Hotel Palomar Beverly Hills in Beverly Hills, California, Kimpton Hotel Wilshire in Los Angeles, California; Kimpton Rowan Palm Springs in Palm Springs, California; Kimpton Sawyer Hotel in Sacramento, California; Kimpton Alma - San Diego in San Diego, California; Kimpton Alton Hotel in San Francisco, California; and Kimpton Canary Hotel in Santa Barbara, California. DEFENDANTS, through their various locations, serve the hospitality industry.

7.    The true names and capacities of the DOE Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to PLAINTIFF, who therefore sues each such Defendant by said fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. PLAINTIFF will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

8.    PLAINTIFF is further informed and believes that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, joint employer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all

3

of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. PLAINTIFF is further informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

## **JOINT LIABILITY**

9.       Under California law, the definition of the terms "to employ" are broadly construed under the applicable IWC Wage Order(s) to have three alternative definitions, including: (1) to exercise control over the wages, hours or working conditions; (2) to suffer of permit to work; or (3) to engage, thereby creating a common law employment relationship. See, *Martinez v. Combs*, 49 Cal.4th 35, 64 (2010). One reason that the IWC defined "employer" in terms of exercising control was to reach situations in which multiple entities control different aspects of the employment relationship. Supervision of the work, in the specific sense of exercising control over how services are properly performed, is properly viewed as one of the "working conditions" mentioned in the wage order. *Id.* at 76. A joint employer relationship exists, for example, when one entity (such as a temporary employment agency) hires and pays a worker, and the other entity supervises the work. *Id*. Moreover, the California Court of Appeal recently broadened the test for joint employment in California, applying a less stringent standard to what constitutes sufficient control by a business over its vendor's employees' wages and working conditions to render that business liable as a joint employer.  See, *Medina v. Equilon Enterprises, LLC*, 68 Cal. App. 5th 868 (2021); "[i]f the putative joint employer instead exercises enough control over the intermediary entity to *indirectly* dictate the wages, hours, or working conditions of the employee, that is a sufficient showing of joint employment," *Id.* at 875 [emphasis added].

10.      During PLAINTIFF's employment by DEFENDANTS, PLAINTIFF and the Class Members (defined below) were jointly employed by DEFENDANTS for purposes of the Wage Orders, under the alternative definitions of "to employ" adopted by the California Supreme Court in *Martinez*, supra. As discussed below, these DEFENDANTS (1) exercised control over wages, hours and working conditions of PLAINTIFF and the Class Members; (2) suffered or permitted

PLAINTIFF and Class Members to work for them; and (3) engaged PLAINTIFF and Class Members to work for them.

11. PLAINTIFF is informed and believes, and thereon alleges that at all relevant times DEFENDANTS operated as a single integrated enterprise with common ownership and centralized human resources. As a result, DEFENDANTS utilized the same unlawful policies and practices across all of their locations/facilities and subjected all of the Class Members to these same policies and practices regardless of the location(s) where they worked. Among other things, PLAINTIFF is informed and believes that: (1) there is common ownership in, and financial control, in DEFENDANTS' companies, (2) DEFENDANTS utilize common management, who have control over the day-to-day operations and employment matters, including the power to hire and fire, set schedules, issue employee policies, and determine rates of compensation across its locations in California; (3) DEFENDANTS utilize the same policies and procedures for all California employees, including issuing the same employee handbooks and other form agreements; (4) DEFENDANTS use at least some of the same Human Resources personnel and attorneys to oversee employment matters; and, (6) DEFENDANTS share employees.

12. PLAINTIFF is informed and believes, and thereon alleges that at all times relevant to this Complaint, DEFENDANTS were the joint employers of PLAINTIFF and the Class Members upon whose behalf PLAINTIFF brings these allegations and causes of action, in that DEFENDANTS, exercised sufficient control over PLAINTIFF and the Class Members' wages, hours and working conditions, and/or suffered or permitted PLAINTIFF and the Class Members to work so as to be considered the joint employers of PLAINTIFF and the Class Members.

13. For example, DEFENDANTS, and each of them, maintain the same agent for service of process and principal place of business as provided to the California Secretary of State and based on information and belief, maintain some of the same attorneys and/or human resources personnel to oversee employment related matters. Moreover, DEFENDANTS issued wage statements to PLAINTIFF that identify the following entity as the legal name of PLAINTIFF's employer: KHRG Canary LLC; however, documents contained in PLAINTIFF's personnel file, including without limitation, PLAINTIFF's employment application, various employment-related policies and/or

other employment-related documents all identify "Kimpton Hotel & Restaurant Group LLC" as the name of PLAINTIFF's employer.

14.    Upon information and belief, PLAINTIFF alleges that DEFENDANTS created a uniform set of policies, practices and/or procedures concerning, inter alia, hourly and overtime pay, time-keeping practices, meal and rest periods, reimbursement of business expenses and other working conditions that were distributed to, and/or applied to PLAINTIFF and the Class Members, and further that DEFENDANTS uniformly compensated and controlled the wages of PLAINTIFF and the Class Members in a uniform manner. DEFENDANTS collectively represented to PLAINTIFF and the Class Members that each was an "at-will" employee of DEFENDANTS, and that DEFENDANTS collectively retained the right to terminate PLAINTIFF's and Class Members' employment with or without cause. Upon information and belief, DEFENDANTS further collectively represented to PLAINTIFF and Class Members in writing the details of their compensation, and the manner in which they were to take meal and rest periods, the procedures required by DEFENDANTS collectively for recordation of hours worked and the policies applicable to PLAINTIFF and Class Members by which DEFENDANTS collectively would evaluate the wage rates of PLAINTIFF and Class Members.

15.    Thus, DEFENDANTS collectively exercised the right to control the wages, hours and working conditions of PLAINTIFF and Class Members. As such, DEFENDANTS collectively held the right to control virtually every aspect of PLAINTIFF's and the Class Members' employment, including the instrumentality that resulted in the illegal conduct for which PLAINTIFF seeks relief in this Complaint.

16.    PLAINTIFF is informed and believes that DEFENDANTS exercised the same control over, applied the same policies and practices, and engaged in the same acts and omissions with regard to the other Class Members.

## CLASS ALLEGATIONS

17.    PLAINTIFF brings this action on behalf of PLAINTIFF, and all others similarly situated as a class action pursuant to Code of Civil Procedure section 382. The class PLAINTIFF seeks to represent include the following subcategories defined as follows and are referred to

collectively herein as "Class" or "Class Members":

      a.  **"Kimpton Hotel & Restaurant Subclass":**

All current and former non-exempt employees that worked either directly or via a staffing agency for any location(s) owned, managed and/or operated by KIMPTON HOTEL & RESTAURANT GROUP, LLC, in California, at any time within the four years prior to the filing of the initial Complaint ("Class Period")

      b.  **"Kimpton Canary Subclass":**

All current and former non-exempt employees that worked either directly or via a staffing agency for any location(s) owned, managed and/or operated by KHRG CANARY LLC, in California, at any time during the Class Period.

      a.  <u>Numerosity.</u> While the exact number of Class Members is unknown to PLAINTIFF at this time, the Class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. PLAINTIFF is informed and believes the Class consists of at least 100 individuals.

      b.  <u>Common Questions of Law and Fact.</u> This lawsuit is suitable for class treatment because common questions of law and fact predominate over individual issues. Common questions include, but are not limited to, the following: (1) whether DEFENDANTS understated hours worked and failed to pay all amounts due to PLAINTIFF and the Class Members for wages earned, including minimum and overtime wages, under California law; (2) whether DEFENDANTS provided PLAINTIFF and the Class Members with all meal periods or premium payments in lieu thereof in compliance with California law; (3) whether DEFENDANTS provided PLAINTIFF and the Class Members with all rest periods or premium payments in lieu thereof, in compliance with California law; (4) whether DEFENDANTS timely produce complete employment records, including but not limited to, all wage statements and time records, upon written request(s) by

PLAINTIFF and the Class Members; (5) whether DEFENDANTS timely paid PLAINTIFF and the Class Members all wages due upon separation of employment; (6) whether DEFENDANTS failed to reimburse PLAINTIFF and the Class Members for all business expenses; and (7) whether DEFENDANTS violated California Business and Professions Code sections 17200, *et seq*.

    c.  <u>Ascertainable Class.</u>  The proposed Class is ascertainable as members can be identified and located using information in DEFENDANTS' business, payroll and personnel records.

    d.  <u>Typicality.</u> PLAINTIFF's claims are typical of the claims of the Class Members. PLAINTIFF suffered a similar injury as members of the Class as a result of DEFENDANTS' common practices regarding, *inter-alia*, failure to calculate and pay all owed minimum and overtime wages, failure to provide proper meal periods and rest periods or premium compensation in lieu thereof, failure to timely produce/allow access to complete employment records upon written request(s) by current and/or former employees, failure to reimburse business expenses, and failure to timely pay all wages due upon separation of employment.

    e.  <u>Adequacy.</u> PLAINTIFF will fairly and adequately protect the interests of the Class Members. PLAINTIFF has no interests adverse to the interests of the other Class Members. Counsel who represent PLAINTIFF are competent and experienced in litigating similar class action cases and are California lawyers in good standing. Counsel for PLAINTIFF have the experience and resources to vigorously prosecute this case.

    f.  <u>Superiority.</u>  A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort

1    and expense that numerous individual actions would engender. Furthermore, as

2    the damages suffered by each individual member of the Class may be relatively

3    small, the expenses and burden of individual litigation would make it difficult

4    or impossible for individual members of the Class to redress the wrongs done to

5    them, while an important public interest will be served by addressing the matter

6    as a class action. The cost to the court system of adjudication of such

7    individualized litigation would be substantial. Individualized litigation would

8    also present the potential for inconsistent or contradictory judgments. Finally,

9    the alternative of filing a claim with the California Labor Commissioner is not

10    superior, given the lack of discovery in such proceedings, the fact that there are

11    fewer available remedies, and the losing party has the right to a trial de novo in

12    the Superior Court.

13    **FACTUAL AND LEGAL ALLEGATIONS**

14    18.    During the relevant period, PLAINTIFF, and each of the Class Members worked for

15    DEFENDANTS in the State of California. At all times referenced herein, DEFENDANTS exercised

16    control over PLAINTIFF and Class Members, and suffered and/or permitted them to work.

17    19.    PLAINTIFF is a former employee of DEFENDANTS. PLAINTIFF worked for

18    DEFENDANTS from in or around March 2022 through in or around the end of January 2023 as a

19    non-exempt employee with a job title of bartender and/or similar job title(s) and/or position(s).

20    DEFENDANTS assigned PLAINTIFF to work at DEFENDANTS' facilities located in Santa

21    Barbara, California, including but not limited to, at DEFENDANTS' restaurants and/or bars and/or

22    other facilities located within one of DEFENDANTS' hotel(s) and/or resort(s) in Santa Barbara,

23    California, which operates under the name(s) Kimpton Canary Hotel and/or Kimpton Canary Hotel

24    Santa Barbara. PLAINTIFF regularly worked at least eight (8) to eleven (11) hours per day, at least

25    five (5) to six (6) days per week.

26    20.    At all relevant times, PLAINTIFF was a non-exempt employee that was paid on an

27    hourly basis for time counted by DEFENDANTS as hours worked.

28    21.    PLAINTIFF also earned tips as part of her compensation.

9

22. **Unpaid Minimum and Overtime Wages**. DEFENDANTS failed to compensate PLAINTIFF and Class Members for all hours worked, resulting in the underpayment of minimum and overtime wages. DEFENDANTS failed to compensate PLAINTIFF and Class Members for all hours worked by virtue of, DEFENDANTS' automatic deduction and time rounding policies, and failure to relieve employees of all duties/employer control during unpaid meal periods or otherwise unlawful practices for missed or improper meal periods, as explained below.

23. Based on information and belief, DEFENDANTS implemented a policy and/or practice of rounding meal period start and end times and/or automatically deducting at least thirty minutes per shift for meal periods, despite having actual and/or constructive knowledge that PLAINTIFF and other Class Members were subject to DEFENDANTS' control during purported meal periods and/or were otherwise not afforded lawful meal periods, depriving PLAINTIFF and Class Members of all wages owed.

24. Based on information and belief, Class Members were not paid for all hours worked due to DEFENDANTS' policy and/or practice of paying according to scheduled hours worked instead of actual time worked, and/or mandated off-the clock work policies and/or practices.

25. For example, as explained above, based on information and belief, DEFENDANTS would unlawfully edit the clock in and out times for PLAINTIFF's and other Class Members' meal periods in order to display at least a thirty minute off-duty meal period during most if not all shifts worked, notwithstanding the fact that DEFENDANTS had actual and/or constructive knowledge that DEFENDANTS had required PLAINTIFF and other Class Members' to perform work-related tasks during their meal periods.

26. Based on information and belief, DEFENDANTS required Class Members to be at their assigned workstations at the start of a scheduled shift, thereby forcing Class Members to gather work-related equipment and/or safety gear, make any necessary adjustments to tools/equipment and/or perform maintenance/cleaning tasks, don work clothing/uniforms and/or protective equipment, and/or complete other work tasks prior to their scheduled shift and/or prior to clocking in/signing in, thereby resulting in pre-shift off-the-clock work.

27. For example, at times, PLAINTIFF was required to perform work tasks prior to

clocking in for the start of her shift, including but not limited to, setting up the bar and/or completing other pre-shift work tasks off the clock, resulting in at least approximately fifteen (15) to twenty (20) minutes of off-the-clock work on each of the numerous occasions this occurred, DEFENDANTS' failure to compensate PLAINTIFF for all hours worked and the underpayment of wages owed to PLAINTIFF.

28. Based on information and belief, Class Members were required to complete other off-the-clock work tasks after clocking out for the end of their shifts and/or during uncompensated meal periods, resulting in off-the-clock work and the underpayment of minimum and overtime wages owed to Class Members.

29. For example, based on information and belief, DEFENDANTS required Class Members to clock out for the end of their shifts but to continue working due to the need to return/maintain tools, clean and/or organize their work stations/areas, provide shift status updates and/or debriefings and/or participate in work meetings, respond to work-related communications and/or perform other work tasks off-the-clock, resulting in the underpayment of minimum wages and overtime wages owed to Class Members.

30. Based on information and belief, DEFENDANTS did not compensate Class Members for time spent donning and doffing personal protective equipment and/or uniforms (e.g., rubber gloves, hairnets, aprons, hats, and/or face masks) during meal periods, before the start of a scheduled shift, and/or after completing a scheduled shift, resulting in the underpayment of wages owed to Class Members.

31. Based on information and belief, at times, Class Members were required to complete off-the-clock work outside of scheduled shifts due to work-related phone calls and/or messages they received to their phones/mobile devices and were required to respond to, including but not limited to, communications from supervisors regarding scheduling and/or other work tasks, resulting in the underpayment of wages owed to Class Members.

32. PLAINTIFF and other Class Members were required to perform other off-the-clock work for which they were not compensated.

33. For example, based on information and belief, at times, DEFENDANTS'

biometric/electronic/POS employee time-keeping system malfunctioned such that Class Members were required to either reinitiate and/or otherwise troubleshoot the system prior to being able to clock in and/or were unable to clock in at all for the start of their shifts and/or clock back in from meal periods, resulting in off-the-clock work and the underpayment of wages owed to Class Members.

34.    Based on information and belief, Class Members experienced the same issues when clocking out for shifts and/or back in for meal periods.  This time spent under DEFENDANTS' control was not recorded and not compensated and resulted in unpaid minimum wages owed to Class Members.

35.    Moreover, based on information and belief, Class Members who opened their work locations were required to first unlock the doors, turn on all the lights in the restaurant/facility and/or deactivate the alarm before clocking in for work, resulting in pre-shift off-the-clock work and the underpayment of wages owed to Class Members.

36.    Based on further information and belief, Class Members in charge of closing their location(s) were required to first clock out for their shifts before enabling the alarm, turning off all the lights in the facility and/or locking the doors. This resulted in additional off-the-clock post-shift work that was not compensated and the underpayment of wages owed to Class Members.

37.    Based on information and belief, DEFENDANTS required Class Members to undergo COVID-19 temperature screenings and/or complete questionnaires prior to beginning their scheduled shift and/or prior to clocking/signing in, thereby, resulting in pre-shift off-the-clock work.

38.    Based on information and belief, at times, DEFENDANTS require/required Class Members to travel around and/or between DEFENDANTS' restaurants, hotels, resorts, offices, facilities and/or locations without compensating Class Members for the travel time.

39.    For example, based on information and belief, due to scheduling issues and/or understaffing, Class Members were at times required after working at their scheduled facility location to cover a shift at another of DEFENDANTS' restaurants/hotels/resorts/facilities/locations but were not compensated for the time spent driving to the second restaurant/facility, resulting in the underpayment of minimum and overtime wages owed to Class Members.

40.    Based on information and belief, DEFENDANTS failed to compensate Class Members for all time spent completing DEFENDANTS' required trainings and/or courses (e.g., food safety and/or food handler courses) and/or testings and/or certifications (e.g., food handler certifications).

41.    Based on information and belief, DEFENDANTS failed to pay Class Members the applicable minimum wage for the county and/or city within which the Class Member worked in California.

42.    Moreover, based on information and belief, DEFENDANTS failed to pay PLAINTIFF and/or other Class Members split shift premium wages when they worked split shifts during the relevant period.

43.    For example, based on information and belief, at times, DEFENDANTS required PLAINTIFF and/or other Class Members to work two separate shifts in the same day. Based on information and belief, DEFENDANTS failed to pay PLAINTIFF and/or other Class Members split shift compensation whenever PLAINTIFF's and/or other Class Members' work schedules were interrupted by non-paid non-working periods established by DEFENDANTS, which resulted in a violation of the applicable Wage Order (See section 4 of all applicable Wage orders, "When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday…). See, also, Cal. Code Regs. Tit. 8, § 11050 (when an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment). DEFENDANTS also failed to separately itemize these split shift premium wages on PLAINTIFF's and/or other Class Members' wage statements, in violation of Labor Code sections 510, 1194 and all applicable IWC Wage Orders.  See, https://www.dir.ca.gov/dlse/split_shift.htm.  (The employer must itemize the premium payment on the pay stub provided to the employee, and it should be shown as a separate category such as "Split Shift Premium" and should not be lumped into another category such as wages, bonus, etc.  DEFENDANTS failed to separately account for the split shift premiums earned by PLAINTIFF and/or other Class Members on their wage statements.

44.    Based on information and belief, DEFENDANTS failed to pay Class Members for

time they were required to spend completing orientation, policy questionnaires, and/or time spent completing the onboarding process including but not limited to reviewing various documents and policies provided by DEFEDANTS.  Based on information and belief, this work time was completed off-the-clock and was not compensated.

45.    Based on further information and belief, DEFENDANTS implemented a time-rounding system that as applied systematically deprived PLAINTIFF and other Class Members of compensable time because the time-rounding system implemented by DEFENDANTS would almost always, if not always, result in understating actual compensable work time.

46.    DEFENDANTS' failure to pay for all time worked by virtue of its time rounding, auto-deduction policies and practices for unlawful meal periods, failure to provide lawful meal periods, and/or other off-the-clock work practices and policies, resulted in the underpayment of minimum wages owed to PLAINTIFF and Class Members as well as unpaid overtime wages for those Class Members who worked more than eight (8) hours in a day and/or more than forty (40) hours in a week.

47.    Based on information and belief, DEFENDANTS had actual and/or constructive knowledge that its time rounding policies/practices, auto-deduction policies and practices, failure to provide lawful meal periods (as described below) and/or other off-the-clock work resulted in the underpayment of minimum wages owed to PLAINTIFF and other Class Members, in violation of California's minimum and overtime wage laws.

48.    Based on information and belief, DEFENDANTS failed and continue to fail to pay Class Members two times their regular rate of pay for time worked beyond twelve (12) hours per workday and for time worked beyond eight (8) hours on the seventh consecutive day of work in a work week, in violation of California's overtime laws.

49.    Based on information and belief, DEFENDANTS failed to incorporate all non-discretionary remuneration, including but not limited to, shift differential pay, bonus pay, and/or other non-discretionary pay into the regular rate of pay used to calculate the owed overtime rate(s), resulting in the miscalculation and underpayment of overtime wages owed to PLAINTIFF and other Class Members.

50.    **Meal Period Violations**. PLAINTIFF and other Class Members consistently worked shifts of at least five and one-half hours or more, entitling them to at least one meal period. However, PLAINTIFF and other Class Members would not receive legally compliant thirty (30) minute first and second meal periods. Based on information and belief, Class Members were consistently unable to take timely, off duty, thirty-minute, uninterrupted meal periods, often being forced to take late meal periods, interrupted meal periods, and/or work through part or all their meal periods due to understaffing, the nature and constraints of their job duties and/or commentary from supervisors pressuring them to take non-compliant meal periods or skip meal periods completely.

51.    For example, based on information and belief, Class Members were forced to take late meal periods in order to complete assigned job duties.   Based on information and belief, Class Members were frequently interrupted during purported meal periods and/or required to work through meal periods and/or had meal periods cut short and/or restricted to DEFENDANTS' premises due to the need to continue assigned job duties.

52.    For example, PLAINTIFF was frequently required to clock out for meal periods but to continue working and/or work through her meal periods completely due to the need to complete assigned job duties.  PLAINTIFF was also frequently required to take any meal periods late (i.e. after working more than five (5) hours) due to the need to complete assigned job duties.

53.    Based on information and belief, other Class Members were consistently suffered and permitted to take meal periods past the fifth hour of work and/or had their meal periods interrupted, cut short, restricted to DEFENDANTS' premises and/or otherwise on duty due to commentary from supervisors, understaffing, the nature and constraints of their job duties, and/or the need to meet DEFENDANTS' goals and expectations.

54.    Based on information and belief, DEFENDANTS implemented policies and/or practices that failed to relieve Class Members of all duties and DEFENDANTS' control during unpaid meal periods.

55.    Based on information and belief, DEFENDANTS required Class Members to complete off-the-clock work prior to their scheduled shift time which DEFENDANTS failed to take into account when scheduling meal periods for Class Members. Based on information and belief,

15

1  meal periods were late, in part due to unaccounted pre-shift off-the-clock work.

2      56.    Based on information and belief, despite DEFENDANTS' failure to provide lawful

3  meal periods, DEFENDANTS implemented a policy and/or practice of rounding the start and end

4  times of PLAINTIFF's and other Class Members' meal periods and/or automatically deducting at

5  least thirty minutes per shift for missed and/or otherwise unlawful meal periods despite having

6  actual and/or constructive knowledge that PLAINTIFF and other Class Members did not receive

7  lawful meal periods.

8      57.    Moreover, per DEFENDANTS' uniform policy and practice, Class Members who

9  worked shifts of more than ten hours did not receive a second legally compliant thirty (30) minute

10  second meal period.

11      58.    Based on information and belief, DEFENDANTS failed to instruct PLAINTIFF and

12  other Class Members as to the timing and duty-free nature of meal periods. Based on further

13  information and belief, DEFENDANTS did not have a written meal period policy, nor did

14  DEFENDANTS have any sort of compliant policy in practice.

15      59.    Moreover, based on information and belief, DEFENDANTS failed to keep accurate

16  records of the true start and end times of PLAINTIFF's and Class Members' meal periods. Based

17  on information and belief, to the extent meal period were recorded, DEFENDANTS illegally

18  rounded the start and end times of purported meal periods resulting in PLAINTIFF and other Class

19  Members not being paid for all time worked as well as late and/or shortened meal periods. *See*

20  *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58.

21      60.    Based on information and belief, DEFENDANTS had actual and/or constructive

22  knowledge that its policies and practices resulted in the denial of uninterrupted meal periods which

23  were free of DEFENDANTS' control owed to PLAINTIFF and other Class Members, in violation

24  of California's meal period laws.

25      61.    DEFENDANTS failed to pay PLAINTIFF and other Class Members, an additional

26  hour of wages at their respective regular rates of compensation for each workday a lawful meal

27  period was not provided. DEFENDANTS either failed to pay a meal period premium at all for each

28  workday a lawful meal period was not provided and/or failed to pay the proper meal period premium

for failure to incorporate all non-discretionary remuneration, including but not limited to, bonuses, shift differential pay and/or other non-discretionary compensation into the regular rate or compensation for purposes of calculating the owed meal period premium.

62.    **Rest Period Violations**. DEFENDANTS did not properly authorize and provide PLAINTIFF and other Class Members with legally compliant rest periods at a rate of every four (4) hours worked or major fraction thereof, that insofar as practicable, are provided in the middle of the work period, as required by law.

63.    PLAINTIFF and other Class Members were not adequately informed, authorized, instructed about, nor permitted an opportunity to take proper rest periods per California law. Based on information and belief, DEFENDANTS had no policy in place nor instruction as to the taking of duty-free rest periods.

64.    Based on information and belief, DEFENDANTS did not have a have a compliant written rest period policy, nor did DEFENDANTS have any sort of compliant rest period policy in practice.

65.    Based on information and belief, Class Members' rest periods were interrupted, cut short, on duty, restricted to premises and/or late due to understaffing, the nature and constraints of their job duties, and/or due to commentary from supervisors/managers pressuring them to skip rest periods completely or otherwise take non-compliant rest periods.

66.    Moreover, DEFENDANTS failed to provide any form of a third rest period on shifts lasting longer than ten hours.

67.    Based on information and belief, DEFENDANTS implemented policies and/or practices that failed to relieve PLAINTIFF and other Class Members of all duties and DEFENDANTS' control during rest periods.

68.    Based on information and belief, Class Members were pressured to complete their work duties according to a designated schedule such that rest periods were only taken once tasks were completed, and/or as time permitted.

69.    Furthermore, DEFENDANTS failed to pay a rest period premium for each day in which PLAINTIFF and Class Members experienced a missed/unlawful rest period in violation of

17

California law. DEFENDANTS either failed to pay a rest period premium at all for each workday a proper rest period was not provided and/or failed to pay the proper rest period premium for failure to incorporate all non-discretionary remuneration, including but not limited to, bonuses, shift differential pay, and/or other non-discretionary compensation into the regular rate of compensation for purposes of calculating the owed rest period premium.

70. **Failure to Produce Employment Records.** Based on information and belief, DEFENDANTS have a uniform policy and practice of failing to timely produce or make available a current or former employee's time, pay, and/or personnel records when requested pursuant to Labor Code sections 226 and/or the applicable Wage Order. For example, PLAINTIFF, through counsel, sent a written request for payroll and personnel records to DEFENDANTS on or around including but not limited to the following dates: January 18, 2024. Yet, DEFENDANTS failed to timely produce complete records within the time periods delineated by California labor law.

71. For example, DEFENDANTS failed to produce PLAINTIFF's wage statements and time records. Based on information and belief, DEFENDANTS failed and continue to fail to timely produce complete time, pay, and personnel records when requested by other Class Members.

72. **Failure to Timely Pay All Wages Upon Separation of Employment**. Based on information and belief, DEFENDANTS failed to timely pay Class Members all wages that were due and owing upon termination or resignation. Based on information and belief, DEFENDANTS untimely provide final wages to Class Members without regard to the timing requirements of Labor Code sections 201-202.

73. Upon separation of employment, Class Members' final paychecks were not timely provided and/or were not timely provided with all owed vacation pay and/or paid time off. Moreover, PLAINTIFF's and Class Members' final paychecks, once provided, did not include all wages owed as they were devoid of, including but not limited to, all owed minimum wages, overtime wages, premium wages, vacation pay, and all owed sick leave and/or paid time off wages at the properly accrued rates.

74. Based on further information and belief, DEFENDANTS failed to timely provide all owed wages immediately upon discharge of employment. Based on information and belief, at times,

18

Class Members experienced breaks in employment caused by DEFENDANTS whereby Class Members would not be called in for work for longer than a single pay period due to including but not limited to DEFENDANTS' lack of work or lack of assignments. Such instances qualify as a discharge of employment. Yet, DEFENDANTS failed to timely pay all owed wages at the end of such periods of employment, in violation of including but not limited to Labor Code section 201-202.

75.     These violations subject DEFENDANTS to civil penalties under Labor Code section 203, 210, and/or 256.

76.     **Unreimbursed Business Expenses**. Based on information and belief, DEFENDANTS required PLAINTIFF and Class Members to incur business expenses as a direct consequence of the performance of their job duties without providing reimbursement, in violation of Labor Code section 2802. Based on information and belief, PLAINTIFF and Class Members were improperly required to provide and maintain work tools that are supposed to be the responsibility of the employer.

77.     Based on information and belief, DEFENDANTS shifted the costs of doing business onto PLAINTIFF and other Class Members requiring them to pay for business expenses, including but not limited to, uniforms/work clothing/work shoes, personal protective/safety gear and/or the use of Class Members' personal mobile phone and data usage for work-related purposes including but not limited to receiving and responding to work-related messages and/or phone calls.

78.     For example, on information and belief, Class Members received calls/messages to their personal cell phones/mobile devices from supervisors and/or other employees regarding scheduling and/or other work tasks but were not provided any and/or full reimbursement from DEFENDANTS for these business expenses incurred as a result of being required to use their personal cell phone(s)/mobile device(s) to carry out their assigned job duties.

79.     For example, PLAINTIFF was required to use her personal cell phone/mobile device for work, including but not limited to, to make and/or receive work-related calls and/or messages, however,  DEFENDANTS did not provide PLAINTIFF with any and/or full reimbursement for the business expenses PLAINTIFF incurred in connection with being required to use his personal cell

phone/mobile device to carry out his assigned job duties, including without limitation, expenses associated with increased data plan charges.

80.    Based on information and belief, Class Members were not reimbursed for the cost of using their personal phone(s) for work-related purposes and/or the cost of purchasing and/or maintaining hand tools, work equipment, work uniforms/work clothing/work shoes, and/or personal protective/safety gear.

81.    For example, based on information and belief, Class Members were not reimbursed for the costs of purchasing and/or maintaining work uniforms/work clothing/work shoes, personal protective/safety gear, such as, but not limited to, face masks, gloves, hairnets and/or work shoes.

82.    For example, PLAINTIFF was required to purchase and/or maintain uniforms, work clothing, work shoes, personal protective /safety gear, including without limitation, apron(s) and/or non-slip shoes and/or other uniforms, work clothing, work shoes, personal protective /safety gear DEFENDANTS required, however, DEFENDANTS failed to provide any and/or full reimbursement for these business expenses.

83.    Based on information and belief, at times, DEFENDANTS required Class Members to use their personal vehicles for work without reimbursing them for the personal vehicle expenses they incurred in connection therewith.

84.    For example, based on information and belief, at times, DEFENDANTS required Class Members to travel from one of DEFENDANTS' hotels/resorts/facilities/restaurants to a second of DEFENDANTS' hotels/resorts/facilities/restaurants for work and/or otherwise required Class Members to use their personal vehicles to carry out their assigned job duties without reimbursing Class Members for the expenses incurred in connection with DEFENDANTS' business use of their personal vehicles.    As such, DEFENDANTS failed to reimburse Class Members at the legally mandated Internal Revenue Service (IRS) per mile compensation rates in effect during the relevant period.

85.    As explained above, based on information and belief, Class Members were not reimbursed for the cost of using their personal phone for work-related purposes and/or the cost of purchasing and/or maintaining work uniforms/work clothing/work shoes, personal protective/safety

gear.

86.    Based on information and belief, DEFENDANTS regularly failed to reimburse and indemnify Class Members for business expenses. Pursuant to California Labor Code section 2802, PLAINTIFF and Class Members were entitled to be reimbursed for all reasonable expenses associated with carrying out DEFENDANTS' orders and/or carrying out the duties assigned by DEFENDANTS.

87.    DEFENDANTS' failure to provide Class Members with full reimbursement for all reasonable expenses associated with carrying out their duties required that Class Members subsidize and/or carry the burden of business expenses in violation of Labor Code section 2802.

88.    PLAINTIFF is informed and believes and alleges thereon that DEFENDANTS engaged in these same herein described unlawful practices and that DEFENDANTS applied these same herein described unlawful practices to all of its employees that it applied to PLAINTIFF.

**FIRST CAUSE OF ACTION**
**Recovery of Unpaid Minimum Wages and Liquidated Damages**
**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

89.    PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

90.    It is fundamental that an employer must pay its employees for all time worked. California Labor Code sections 218 and 218.5 provide a right of action for nonpayment of wages. Labor Code section 222 prohibits the withholding of part of a wage. Labor Code section 224 only permits deductions from wages when the employer is required or empowered to do so by state or federal law or when the deduction is expressly authorized in writing by the employee for specified purposes that do not have the effect of reducing the agreed upon wage. Labor Code section 223 prohibits the pay of less than a statutory or contractual wage scale.

91.    Pursuant to California Labor Code sections 1194 and 1197, and the Industrial Wage Commission ("IWC") Wage Orders, an employer must pay its employees for all hours worked, up to 40 hours per week or 8 hours per day, at a regular rate no less than the mandated minimum wage. Payment to an employee of less than the applicable minimum wage for all hours worked in a payroll period is unlawful.

92.    DEFENDANTS violated California's minimum wage laws by failing to compensate

PLAINTIFF and the Class Members for all hours worked by virtue of, among other things, DEFENDANTS' time rounding, automatic deduction for meal periods, off-the-clock/unpaid work completed during meal periods, other pre-shift, post-shift and/or otherwise off-the-clock work, and/or payment according to scheduled hours worked rather than actual hours worked (described above), which resulted in the failure to account for all hours worked and thus the denial of minimum wages.

93.    DEFENDANTS had and continue to have a policy of failing to pay PLAINTIFF and Class Members for all hours worked.

94.    Based on information and belief, DEFENDANTS had actual or constructive knowledge that its time-rounding policies and practices, auto-deduction policies and practices for meal periods, failure to relieve employees of all duties and employer control during unpaid meal periods, policy and practice of payment according to scheduled work time rather than actual work time, and/or other mandated off-the-clock work resulted in the underpayment of minimum wages owed to PLAINTIFF and other Class Members.

95.    Pursuant to Labor Code sections 1194 and 1194.2, PLAINTIFF and the Class Members are entitled to recover all unpaid minimum wages and liquidated damages thereon, plus attorney's fees and costs, in an amount to be proved at trial.

## SECOND CAUSE OF ACTION
### Recovery of Unpaid Overtime Wages
### (By PLAINTIFF and the Class Members Against all DEFENDANTS)

96.    PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

97.    Employees in California must be paid overtime, equal to one and one-half times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh consecutive day of work in a workweek, and they must be paid double the regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) on the seventh consecutive day of work in a workweek, unless they are exempt.

98.    PLAINTIFF and the Class Members worked overtime hours for which they were not compensated by DEFENDANTS by virtue of, among other things, DEFENDANTS' time rounding,

automatic deduction for meal periods, off-the-clock/unpaid work completed during meal periods, other pre-shift, post-shift and/or otherwise off-the-clock work, and/or payment according to scheduled hours worked rather than actual hours worked (described above), and/or other unlawful policies and/or practices described above which resulted in unpaid minimum and overtime wages which resulted in the failure to account for all hours worked and thus the denial of all owed overtime wages.

99.    Based on information and belief, DEFENDANTS failed to pay twice Class Members' regular rate(s) of pay for time worked beyond twelve (12) hours per workday and for time worked beyond eight (8) hours on the seventh consecutive day of work in a work week, in violation of California's overtime laws.

100.    Based on information and belief, DEFENDANTS further violated California's overtime wage laws by failing to incorporate all non-discretionary compensation, including but not limited to, non-discretionary bonus compensation, shift differentials, and/or other non-discretionary compensation into the regular rate of pay used to calculate the overtime rate of pay. Failing to include non-discretionary compensation into the regular rate of pay resulted in a miscalculation of the overtime wage rate, resulting in the underpayment of overtime wages owed to PLAINTIFF and other Class Members.

101.    DEFENDANTS' conduct described above is in violation of California Labor Code sections 510 and 1194 and all applicable Wage Orders.

102.    PLAINTIFF and the Class Members are entitled to recover all unpaid overtime wages, plus attorney's fees and costs, in an amount to be proved.

### THIRD CAUSE OF ACTION
**Failure to Provide Meal Periods or Compensation in Lieu Thereof**
**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

103.    PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

104.    Pursuant to Labor Code section 512 and all applicable IWC Wage Orders, DEFENDANTS were required to provide PLAINTIFF and the Class Members with one 30-minute meal break free from all duties and employer control for all shifts longer than 5 hours, and a second 30-minute meal break free from all duties for all shifts longer than 10 hours. Meal periods can be

waived, but only under the following circumstances: (1) if an employee's total work period in a day is over five (5) hours but no more than six (6) hours, the required meal period may be waived by mutual consent of the employer and employee, and (2) if an employee's total work period in a day is over ten (10) hours but no more than twelve (12) hours, the required second meal period may be waived by mutual consent of the employer and employee, but only if the first meal period was not waived. Employers covered by the Wage Orders have an obligation to both (1) relieve their employees for at least one meal period for shifts over five hours (see above), and (2) to record having done so.

105.    Employers must pay employees an additional hour of wages at the employees' regular rate of pay for each missed or unlawful meal period (e.g., less than 30 minutes, interrupted meal period, first meal period provided after five (5) hours, second meal period provided after 10 hours). Lab. Code § 226.7.

106.    As explained above, PLAINTIFF and other Class Members were consistently unable to take timely, off duty, thirty-minute, uninterrupted first and second meal periods, often being forced to take late meal periods, interrupted meal periods, and/or work through part or all of their meal periods due to understaffing, the nature and constraints of their job duties, and/or commentary from supervisors pressuring them to take non-compliant meal periods or skip meal periods completely.

107.    Based on information and belief, DEFENDANTS had and continue to have a policy of rounding the start and end times of employees' meal periods and/or automatically deducting thirty minutes per shift despite having actual and/or constructive knowledge that PLAINTIFF and Class Members did not receive compliant meal periods.

108.    Moreover, based on information and belief, Class Members did not receive a timely, uninterrupted second meal period when working shifts over ten (10) hours in a workday.

109.    PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS had actual and/or constructive knowledge that its time-rounding and auto-deduction policies and practices, other unlawful policies and practices resulted in the denial of compliant meal periods in violation of California's meal period laws.

110.    DEFENDANTS also failed to pay premiums for missed/otherwise unlawful meal periods in violation of California law and/or failed to pay the proper meal period premium for failure to incorporate all non-discretionary remuneration including but not limited to, bonuses, shift differential pay and/or other non-discretionary compensation into the regular rate or compensation for purposes of calculating the owed meal period premium.

111.    As a result, under Labor Code section 226.7, PLAINTIFF and the Class Members are entitled to one additional hour's pay at the employee's regular rate of compensation for each day a meal period was missed, late, interrupted, or otherwise unlawful, plus attorneys' fees and costs, all in an amount to be proved at trial.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Rest Periods or Compensation in Lieu Thereof**
**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

112.    PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

113.    Labor Code section 226.7 and all applicable IWC Wage Orders require an employer to authorize or permit an employee to take a rest period of ten (10) net minutes for every four hours worked or major fraction thereof. Such rest periods must be in the middle of the four-hour period "insofar as practicable." In *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004 (2012), the California Supreme Court held that employees are entitled to a 10-minute paid rest period for shifts from 3 ½ to 6 hours in a length, two 10-minute rest periods for shifts more than 6 hours up to 10 hours, and three 10-minute rest periods for shifts of more than 10 hours up to 14 hours. (*Id.* at 1029). The rest period requirement obligates employers to permit and authorize employees to take off-duty rest periods, meaning employers must relieve employees of all duties and relinquish control over how employees spend their time. *Augustus v. ABM Security Services, Inc.*, (2016) 5 Cal.5th 257.

114.    If the employer fails to provide any required rest period, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday the employer did not provide at least one legally required rest period, pursuant to Labor Code section 226.7.

115.    Moreover, under California law rest periods must be a "net" ten minutes in a suitable rest area. *Id.* at 268 (relying on January 3, 1986 and February 22, 2002 Division of Labor Standards Enforcement (DLSE) Letters wherein the DLSE ruled that the net ten-minute language for rest periods means ten minutes of time in a rest area and cannot include time it takes to get to and from the rest area). The employer must show that it clearly articulates the right to a net ten minutes, which means it must clearly communicate what "net" ten minutes means (i.e., regardless of what happens along the way to and from a rest area, employees are entitled to a full ten minutes of rest in the rest area). *Id*.; see also, *Bufil v. Dollar Fin. Grp., Inc.*, (2008) 162 Cal. App. 4th 1193, 1199 (the "onus is on the employer to clearly communicate the authorization and permission [to take rest periods] to its employees.").

116.    PLAINTIFF and the Class Members did not receive legally compliant, timely 10-minute rest periods for every four (4) hours worked or major fraction thereof. As explained above, any purported rest periods were late, interrupted, cut short, on duty, and/or otherwise subject to DEFENDANTS' control due to the nature and constraints of Class Members' job duties, understaffing, and/or commentary from supervisors pressuring PLAINTIFF and Class Members to skip rest periods completely or otherwise take non-compliant rest periods.

117.    Based on information and belief, DEFENDANTS implemented policies and/or practices that failed to relieve PLAINTIFF and other Class Members of all duties and employer control during rest periods. Based on further information and belief, Class Members were pressured to complete their work duties according to a designated schedule such that rest periods were only taken once tasks were completed, and/or as time permitted.

118.    As a result, PLAINTIFF and Class Members did not receive legally compliant first, second, or third rest periods as required by California law.

119.    Moreover, based on information and belief, DEFENDANTS failed to pay a rest period premium to PLAINTIFF and other Class Members for each workday in which there was a missed or otherwise unlawful rest period. Based on further information and belief, when a rest premium was paid, DEFENDANTS failed to include non-discretionary compensation including but not limited to, bonuses, shift differential pay, and/or other non-discretionary compensation into the

26

1  regular rate of compensation for purposes of determining the owed rest period premium.

2      120.    DEFENDANTS are therefore liable to PLAINTIFF and the Class Members for one

3  hour of additional pay at the regular rate of compensation for each workday that a required rest

4  period was not provided, pursuant to California Labor Code section 226.7 and the applicable Wage

5  Order, plus pre-judgment interest, plus attorneys' fees and costs, all in an amount to be proved at

6  trial.

**FIFTH CAUSE OF ACTION**
**Failure to Produce Records**
**in Violation of Labor Code Section 226**
**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

9      121.    PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

10      122.    *Time and Pay Records*. Labor Code section 226(b)-(c) and all applicable IWC Wage

11  Orders, section 7 require that employers keep the following information on file for each employee

12  for a minimum of three years: The employee's dates of employment; the employee's hourly rates

13  and the corresponding number of hours worked by the employee at each hourly rate, when the

14  employee begins and ends each work period (including meal periods) and split intervals; total hours

15  worked by the employee; all deductions; gross wages earned; and net wages earned.

16      123.    Section (b) of Labor Code section 226 further requires employers to "afford current

17  and former employees the right to inspect or receive a copy of records pertaining to their

18  employment upon reasonable request to the employer." Section (c) of Labor Code section 226

19  provides that, "an employer who receives a written or oral request to inspect or receive a copy of

20  records pursuant to subdivision (b) pertaining to a current or former employee shall comply with

21  the request as soon as practicable, but no later than 21 calendar days from the date of the request. A

22  violation of this subdivision is an infraction." An employer's failure to comply within this timeframe

23  entitles a current or former employee to recover a seven hundred fifty-dollar ($750) penalty from

24  the employer. Lab. Code section 226(f).

25      124.    Based on information and belief, DEFENDANTS have a uniform policy and practice

26  of failing to produce or make available a current or former employee's personnel records and/or

27  payroll records when requested pursuant to Labor Code sections 226 and/or the applicable Wage

Order.

125.     DEFENDANTS' conduct explained above is in violation of Labor Code Sections 226(b) & (c).  Accordingly, PLAINTIFF and Class Members are therefore each entitled to recover a $750.00 penalty from DEFENDANTS, along with costs and reasonable attorneys' fees, pursuant to Labor Code Section 226(f).

## SIXTH CAUSE OF ACTION
### Failure to Timely Pay All Wages Due Upon Separation of Employment
### (By PLAINTIFF and the Class Members Against all DEFENDANTS)

126.     PLAINTIFF incorporates all preceding paragraphs as if fully set forth herein.

127.     California Labor Code section 201(a) provides, in relevant part, that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

128.     California Labor Code section 202(a) provides, in relevant part, that "[i]f an employee not having a written contract for a definite period quits his or her employment,  his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of  his or her intention to quit, in which case the employee is entitled to  his or her wages at the time of quitting."

129.     Based in information and belief, DEFENDANTS failed and continue to fail to timely pay final wages to PLAINTIFF and Class Members upon separation of employment in violation of Labor Code section 201-202. Moreover, final paychecks once provided to PLAINTIFF and Class Members do not include all wages owed as they are devoid of, including but not limited to, all owed minimum wages, overtime wages, premium wages, vacation pay, and all owed sick leave and/or paid time off wages at the properly accrued rates.

130.     Under Labor Code section 203, PLAINTIFF and the Class Members who are no longer employed by DEFENDANTS are entitled to recover waiting time penalties of up to 30 days' pay, plus attorney's fees and costs, in an amount to be proved at trial.

## SEVENTH CAUSE OF ACTION
### Failure to Reimburse Business Expenses
### (By PLAINTIFF and the Class Members Against all DEFENDANTS)

131.     PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

132.    California law requires employers to indemnify their employees for all necessary expenditures incurred by the employee in direct consequence of the discharge of their duties or of their obedience to the directions of the employer. *See* Cal. Lab. Code s. 2802 and all applicable Wage Orders section 9(b). Furthermore, "for purposes of [section 2802], the term 'necessary expenditure or losses' shall include all reasonable costs, including, but not limited to, attorneys' fees incurred by the employee enforcing the rights granted by this section."

133.    Among other things, under California law, when employees must use their personal cellphones for work-related purposes, the employer must reimburse them for a reasonable percentage of their cell phone bills. See *Cochran v. Schwan's Home Services*, Inc. (2014) 228 Cal.App.4th 1137, 1140. To show liability, an employee will only need to show that he or she was required to use their personal cellphone for work-related purposes and not reimbursed for the use. Id. 1144-1145. California law also requires employers to reimburse employees for automobile expenses incurred for the business use of personal vehicles, such as for mileage, gas, and the wear and tear on the vehicle. *See Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554.

134.    As described above, PLAINTIFF and the Class Members were improperly required to pay for business expenses that are legally the responsibility of the employer.

135.    DEFENDANTS' failure to provide PLAINTIFF and the Class Members with full reimbursement for all reasonable expenses associated with carrying out their duties required that PLAINTIFF and the Class Members subsidize and/or carry the burden of business expenses in violation of Labor Code section 2802.

136.    As a result of DEFENDANTS' unlawful conduct, PLAINTIFF and the Class Members have suffered injury in that they were not completely reimbursed as mandated by California law.

137.    Pursuant to California Labor Code section 2802, PLAINTIFF and the Class Members are entitled to recover the full amount of reimbursable expenses due, in addition to reasonable attorneys' fees, and costs of suit.

## EIGHTH CAUSE OF ACTION
### Unfair Competition
### (By PLAINTIFF and the Class Members Against all DEFENDANTS)

1    138.    PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

2    139.    DEFENDANTS' unlawful conduct alleged herein constitutes unfair competition

3    within the meaning of California Business and Professions Code section 17200 *et seq*. This unfair

4    conduct includes all unlawful conduct alleged herein, including but not limited to: DEFENDANTS'

5    failure to pay minimum and overtime wages by virtue of its illegal policies and practices;

6    DEFENDANTS' failure to authorize or permit, or provide, all required meal and rest periods or pay

7    proper premiums in lieu thereof; DEFENDANTS' failure to timely produce complete employment

8    records, including but not limited to, all wage statements and time records, upon written request by

9    former and/or current employees; DEFENDANTS' failure to reimburse business expenses;

10    DEFENDANTS' failure to timely pay all wages owed upon separation of employment; and

11    DEFENDANTS' failure to provide paid sick leave (or paid time off in lieu thereof) at the properly

12    accrued rates (due to, including but not limited to, DEFENDANTS' failure to incorporate all non-

13    discretionary compensation into the sick pay calculation and failure to base the accrued sick leave

14    on the correct number of hours worked as a result of DEFENDANTS' time-rounding/auto deduction

15    policies and practices, payment according to scheduled hours worked and/or other off-the-clock

16    work policies and practices).

17    140.    Due to DEFENDANTS' unfair and unlawful business practices in violation of the

18    California Labor Code, DEFENDANTS have gained a competitive advantage over other

19    comparable companies doing business in the State of California that comply with their obligations

20    to authorize or permit rest periods and meal periods or pay proper meal and rest period premiums

21    in lieu thereof, to properly accrue and pay sick time benefits, to timely produce complete

22    employment records upon written request(s) by current and/or former employees, to reimburse

23    employees for all business expenses, to pay all owed minimum and overtime wages and to pay all

24    wages due upon separation of employment of their employees.

25    141.    As a result of DEFENDANTS' unfair competition as alleged herein, PLAINTIFF

26    and Class Members have suffered injury in fact and lost money or property, as described in more

27    detail above. Pursuant to California Business and Professions Code section 17200, *et seq*.,

28    PLAINTIFF and Class Members are entitled to restitution of all wages and other monies rightfully

belonging to them that DEFENDANTS failed to pay and wrongfully retained by means of their unlawful and unfair business practices.

142.    PLAINTIFF also seeks an injunction against DEFENDANTS on behalf of the Class Members, enjoining DEFENDANTS and any and all persons acting in concert with them from engaging in each of the unlawful practices and policies set forth herein.

143.    PLAINTIFF also seeks an award of attorney's fees pursuant to Code Civ. Proc Section 1021.5 and as permitted by law, and an award for costs reasonably incurred, as permitted by law.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

PLAINTIFF WAVERLY LATOURETTE'S CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for relief and judgment, on behalf of PLAINTIFF and Class Members as follows:

1. For an order that the action be certified as a class action;

2. For an order that PLAINTIFF be appointed as class representative;

3. For an order that counsel for PLAINTIFF be appointed as class counsel;

4. For compensatory damages according to proof;

5. For liquidated damages according to proof;

6. For penalties according to proof;

7. For an order requiring DEFENDANTS to make restitution of all amounts wrongfully withheld from PLAINTIFF and the Class Members;

8. For an order finding DEFENDANTS have engaged in unfair competition in violation of section 17200, *et seq*., of the California Business and Professions Code;

9. For an order enjoining DEFENDANTS from further acts of unfair competition;

10. For pre-judgment interest as permitted by law;

11. For attorney's fees and costs reasonably incurred; and

12. For such other and further relief that the Court deems just and proper.


Dated: March 26, 2024                                    **CROSNER LEGAL, PC**


                                            By: _____
                                                Jamie K. Serb, Esq.
                                                Brandon Brouillette, Esq.
                                                Zachary M. Crosner, Esq.
                                                Attorneys for Plaintiff,
                                                WAVERLY LATOURETTE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DEMAND FOR JURY TRIAL</u>

PLAINTIFF demands a trial by jury on all claims so triable.

Dated: March 26, 2024                                    **CROSNER LEGAL, PC**

By: _____

Jamie K. Serb, Esq.
Brandon Brouillette, Esq.
Zachary M. Crosner, Esq.
Attorneys for Plaintiff,
WAVERLY LATOURETTE

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Jamie K. Serb (SBN 289601), Brandon Brouillette (SBN 273156)
Zachary M. Crosner (SBN. 272295),
CROSNER LEGAL PC, 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210
TELEPHONE NO.: (866) 276-7637     FAX NO.: (310) 510-6429
EMAIL ADDRESS: jamie@crosnerlegal.com, bbrouillette@crosnerlegal.com, zach@crosnerlegal.com
ATTORNEY FOR *(Name):* Waverly LaTourette

**FOR COURT USE ONLY**

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**03/26/2024**
**Clerk of the Court**
BY: DAEJA ROGERS
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Waverly LaTourette v. Kimpton Hotel & Restaurant Group, LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: **CGC-24-613426** |
|---|---|---|
| [×] Unlimited (Amount demanded exceeds $35,000)   [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[×] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [×] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [×] monetary b. [×] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* 8
5. This case [×] is [ ] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: March 26, 2024

Zachary Crosner
(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

CM-010

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
  domain, landlord/tenant, or
  foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner
    Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic
    relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition



## Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package



> The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint**

**WHAT ARE THE ADR OPTIONS?**

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1) MANDATORY SETTLEMENT CONFERENCES**

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

**2)  MEDIATION**

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco  Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional  malpractice, insurance coverage,  toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program.  A preference for a specific judge may be indicated.  The court will coordinate assignment of cases for the program.  There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

**3)  ARBITRATION**

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A)  JUDICIAL ARBITRATION**

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication  that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration.  (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule  4.1 allows  for mediation  in lieu of judicial arbitration,  so long  as the parties  file a stipulation  to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

**(B)  PRIVATE ARBITRATION**

Although not currently a part of the court's ADR program, civil disputes may also be  resolved  through private   arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

**HOW DO I PARTICIPATE IN ADR?**

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
adrcoordinator@sftc.org
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT.  YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS.   THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*) | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.: | |
| ATTORNEY FOR *(Name):* | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
400 McAllister Street
San Francisco, CA 94102-4514

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: _____ |
|---|---|
| | **DEPARTMENT 610** |

**1)** **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐ **Other ADR process** (describe) _____

**2)** **The parties agree that the ADR Process shall be completed by (date):** _____

**3)** **Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

| _____ | _____ |
|---|---|
| Name of Party Stipulating | Name of Party Stipulating |
| _____ | _____ |
| Name of Party or Attorney Executing Stipulation | Name of Party or Attorney Executing Stipulation |
| _____ | _____ |
| Signature of Party or Attorney | Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  02/24                    **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 272295 | FOR COURT USE ONLY |
|---|---|---|

NAME: Zachary Crosner
FIRM NAME: Crosner Legal, P.C.
STREET ADDRESS: 9440 Santa Monica Blvd., Suite 301
CITY: Beverly Hills    STATE: CA    ZIP CODE: 90210
TELEPHONE NO.: (866) 276-7637    FAX NO.: (310) 510-6429
E-MAIL ADDRESS: zach@crosnerlegal.com; karen@crosnerlegal.com
ATTORNEY FOR (Name): Waverly LaTourette

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, 94102
BRANCH NAME: Civic Center Courthouse

Plaintiff/Petitioner: Waverly LaTourette
Defendant/Respondent: Kimpton Hotel & Restaurant Group, LLC, et al.

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL**

CASE NUMBER:
CGC-24-613426

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**04/17/2024**
**Clerk of the Court**
BY: YOLANDA TABO
Deputy Clerk

TO *(insert name of party being served):* KIMPTON HOTEL & RESTAURANT GROUP, LLC, a Delaware Limited Liability Company

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: March 28, 2024

Manuel Martinez
(TYPE OR PRINT NAME)

(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

---

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [ x ]   A copy of the summons and of the complaint.
2. [ x ]   Other *(specify):*
       Civil Case Cover Sheet; Notice to Plaintiff; and Alternative Dispute Resolution (ADR) Information Package

*(To be completed by recipient):*

Date this form is signed: April 17, 2024

Ping Wang on behalf of Kimpton Hotel & Restaurant Group, LLC
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

**Page 1 of 1**

---

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
*www.courtinfo.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]    [ Save this form ]    [ Clear this form ]

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 272295 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO: 272295

NAME: Zachary Crosner
FIRM NAME: Crosner Legal, P.C.
STREET ADDRESS: 9440 Santa Monica Blvd., Suite 301
CITY: Beverly Hills    STATE: CA    ZIP CODE: 90210
TELEPHONE NO.: (866) 276-7637    FAX NO.: (310) 510-6429
E-MAIL ADDRESS: zach@crosnerlegal.com; karen@crosnerlegal.com
ATTORNEY FOR (Name): Waverly LaTourette

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, 94102
BRANCH NAME: Civic Center Courthouse

**FOR COURT USE ONLY**

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**04/17/2024**
**Clerk of the Court**
BY: YOLANDA TABO
Deputy Clerk

Plaintiff/Petitioner: Waverly LaTourette
Defendant/Respondent: Kimpton Hotel & Restaurant Group, LLC, et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: CGC-24-613426 |
|---|---|

TO *(insert name of party being served):*  KHRG CANARY LLC, a Delaware Limited Liability Company

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: March 28, 2024

▶

Manuel Martinez
(TYPE OR PRINT NAME)    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☒ A copy of the summons and of the complaint.
2. ☒ Other *(specify):*
   Civil Case Cover Sheet; Notice to Plaintiff; and Alternative Dispute Resolution (ADR) Information Package

*(To be completed by recipient):*

Date this form is signed: April 17, 2024

Ping Wang on behalf of KHRG Canary LLC

▶

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)    ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]
**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
*www.courtinfo.ca.gov*

| Print this form | Save this form | Clear this form |
|---|---|---|

EXHIBIT B

EXHIBIT B

1  **SEYFARTH SHAW LLP**
   Leo Q. Li (SBN 293539)
2  lli@seyfarth.com
   Sofya Perelshteyn (SBN 320931)
3  sperelshteyn@seyfarth.com
   2029 Century Park East, Suite 3500
4  Los Angeles, California 90067-3021
   Telephone:    (310) 277-7200
5  Facsimile:    (310) 201-5219

6  Eric E. Hill (SBN 173247)
   ehill@seyfarth.com
7  Ping Wang (SBN 351428)
   pwang@seyfarth.com
8  560 Mission Street, 31st Floor
   San Francisco, California 94105-2930
9  Telephone:    (415) 397-2823
   Facsimile:    (415) 397-8549

10

11 Attorneys for Defendants
   KIMPTON HOTEL & RESTAURANT
   GROUP, LLC; KHRG CANARY LLC

12

13

14                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                       **COUNTY OF SAN FRANCISCO**

16

17 | WAVERLY LATOURETTE, as an individual and on behalf of all other similarly situated Class Members, | Case No.:  CGC-24-613426 |

18

19 |                     Plaintiff, | **DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED CLASS ACTION COMPLAINT** |

20 |             v. |

21 | KIMPTON HOTEL & RESTAURANT GROUP, LLC, a Delaware Limited Liability Company; KHRG CANARY LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive, | Complaint Filed: March 26, 2024 |

22

23

24 |                     Defendants. |

25

26

27

28

1    Defendants KIMPTON HOTEL & RESTAURANT GROUP, LLC and KHRG CANARY LLC

2    ("Defendants"), hereby answer the unverified Class Action Complaint ("Complaint") filed by Plaintiff

3    WAVERLY LATOURETTE ("Plaintiff") as follows:

4                                    **GENERAL DENIAL**

5    Pursuant to California Code of Civil Procedure section 431.30, Defendants deny, generally and

6    specifically, each and every allegation, statement, matter and each purported cause of action contained

7    in Plaintiff's Complaint, and without limiting the generality of the foregoing, deny generally and

8    specifically that Plaintiff or any individual she seeks to represent has been damaged in any way by

9    reason of any acts or omissions of Defendants.

10                         **AFFIRMATIVE AND OTHER DEFENSES**

11    Defendants assert the following affirmative and other defenses without assuming any burdens of

12    production or proof that, pursuant to law, belong to Plaintiff.  Defendants reserve the right to amend

13    their answer and to assert any additional defenses and affirmative defenses as may become available or

14    apparent during the course of this litigation.

15                                    **FIRST DEFENSE**

16                        **(Failure to State a Cause of Action)**

17    1.    Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action against

18    Defendants.

19                                    **SECOND DEFENSE**

20                             **(Statute of Limitations)**

21    2.    Plaintiff's purported causes of action are barred, in whole or in part, by the applicable

22    statutes of limitations, including, but not limited to, the limitations contained in California Code of Civil

23    Procedure sections 338, 340, 343, and California Business and Professions Code section 17208.

24                                    **THIRD DEFENSE**

25                                    **(Laches)**

26    3.    The Complaint, and each and every cause of action alleged therein, is barred by the

27    doctrine of laches.

28

1

310353739v.3

## FOURTH DEFENSE

### (Waiver)

4.      The Complaint, and each and every cause of action alleged therein, is barred by the doctrine of waiver.

## FIFTH DEFENSE

### (Estoppel)

5.      Plaintiff, and those individuals she seeks to represent, are estoped by their conduct to assert any cause of action against Defendants.

## SIXTH DEFENSE

### (Unclean Hands)

6.      Plaintiff's claims, and the claims of those she seeks to represent, are barred by the doctrine of unclean hands.

## SEVENTH DEFENSE

### (Failure to Exhaust Administrative Remedies)

7.      Plaintiff's claims, in whole or in part, are barred because Plaintiff has failed to exhaust her administrative remedies or to comply with the statutory prerequisites for bringing suit.

## EIGHTH DEFENSE

### (Consent)

8.      Plaintiff, and those individuals she seeks to represent, are precluded from recovery for any alleged wrongs to which they consented.

## NINTH DEFENSE

### (Release)

9.      Plaintiff's claims, and the claims of those she seeks to represent, are barred in whole or in part to the extent that Plaintiff or any individual she seeks to represent entered into a valid release, or is covered by a valid release, in relation to the subject claims.

## TENTH DEFENSE

### (Res Judicata and Collateral Estoppel)

10.      Plaintiff's Complaint, and each and every claim for relief alleged therein, is barred by the

2

310353739v.3

doctrines of res judicata and/or collateral estoppel, to the extent that Plaintiff or any putative class member has asserted in any prior legal or administrative proceeding that he or she was entitled to payment of wages, damages, liquidated damages, penalties, or other amounts, and did not prevail on such claim.

## ELEVENTH DEFENSE

### (Contribution by Plaintiff's Own Acts)

11.    If the injuries and/or alleged damages in the Complaint occurred at all (which Defendants deny), such injuries and/or alleged damages were proximately caused by and/or contributed to by Plaintiff and/or the putative class's own acts, omissions, and/or failures to act.

## TWELFTH DEFENSE

### (Not Employed by Defendants)

12.    Plaintiff's claims, and the claims of all members of the putative class, are barred to the extent that Plaintiff alleges claims for time periods during which she or any other member of the putative class was not employed by one or more of the Defendants.

## THIRTEENTH DEFENSE

### (Indemnity/Contribution)

13.    Defendants allege as to each and every cause of action that they are entitled to indemnification and contribution by apportionment against all parties, persons or entities whose acts or omissions directly or proximately caused or contributed to the incident(s) alleged in the Complaint, or to the damages allegedly sustained by Plaintiff and those she seeks to present, if any, either as alleged in the Complaint or otherwise.

## FOURTEENTH DEFENSE

### (Accord and Satisfaction)

14.    Plaintiff's claims are barred by the doctrine of accord and satisfaction. Specifically, Plaintiff and those she seeks to represent were properly and fully compensated for all work performed for Defendants, and any acceptance of these payments constituted an accord and satisfaction for all debts, if any, owed by Defendants to Plaintiff and those she seeks to represent.

## FIFTEENTH DEFENSE

### (Failure To Use Ordinary Care)

15.    Plaintiff's Complaint, and each purported cause of action alleged therein, is barred to the extent that Plaintiff and/or those she seeks to represent received good consideration in agreement to serve as employees, yet failed to use ordinary care and diligence during their employment, or employment-related duties, pursuant to California Labor Code Section 2854.

## SIXTEENTH DEFENSE

### (Failure To Follow Employer's Directions)

16.    Plaintiff and those she seeks to represent are not entitled to recover from Defendants as alleged in the Complaint for any damages, penalties or other relief, due to their failure to comply with all directions of their employer concerning the service on which they were engaged, in violation of California Labor Code section 2856.

## SEVENTEENTH DEFENSE

### (Not Compensable Time)

17.    Plaintiff's claims, and those of the members of the putative class, are precluded to the extent that all or part of the time for which pay is claimed is not compensable time worked.

## EIGHTEENTH DEFENSE

### (*De Minimis* Doctrine)

18.    Plaintiff's Complaint fails to the extent that, even if Plaintiff and/or the putative class were not paid for all work performed, such work is not compensable pursuant to the *de minimis* doctrine. Pursuant to the *de minimis* doctrine, an employer is not required to pay for insubstantial, insignificant, irregular, or brief periods of purported off-the-clock work. *See*, *Troester v. Starbucks Corporation*, 5 Cal. 5th 829 (2018).

## NINETEENTH DEFENSE

### (Failure To Inform Employer of Alleged Violations)

19.    Plaintiff's Complaint, and each cause of action contained therein, is barred because Plaintiff did not inform Defendants of any alleged unlawful conduct or purported complaints, including, but not limited to, any alleged failure to pay wages or premium wages, any alleged meal or rest period

310353739v.3

violations, any alleged failure to reimburse business expenses, or any alleged failure to produce records, prior to filing a lawsuit. Plaintiff, therefore, did not provide Defendants with an opportunity to correct any alleged violations and provide the appropriate remedy, if any, to Plaintiff prior to the time she filed her claims.

## TWENTIETH DEFENSE

### (Avoidable Consequences)

20.      Plaintiff's claims, and the claims of those she seeks to represent, are barred to the extent they failed to take advantage of any preventative or corrective opportunities provided by Defendants.

## TWENTY-FIRST DEFENSE

### (Substantial Compliance)

21.      Plaintiff's Complaint, and each purported cause of action alleged therein, is barred in whole or in part because Defendants complied with their statutory obligations, and to the extent it is determined that there was technical non-compliance, Defendants substantially complied with their obligations and are not liable in whole or in part for the claims of Plaintiff and/or some or all of the others she seeks to represent.

## TWENTY-SECOND DEFENSE

### (Penalties Unconstitutionally Excessive)

22.      Plaintiff and those she seeks to represent are not entitled to any penalty award under the California Labor Code to the extent that the penalty provisions of the Labor Code establish penalties that are mandatory and are disproportionate to any damage or loss incurred as a result of Defendants' conduct, and therefore are unconstitutional under the 8th Amendment of the United States Constitution and Article I section VII of the California Constitution.

## TWENTY-THIRD DEFENSE

### (Exclusions, Exceptions, Setoffs, and Credits)

23.      Plaintiff's claims and those of potential class members are barred, in whole or in part, by statutory and regulatory exclusions, exceptions, setoffs or credits under state or federal law, including the Fair Labor Standards Act.

310353739v.3

## TWENTY-FOURTH DEFENSE

### (Offset)

24.    Defendants are entitled to an offset for any overpayments of wages or other consideration previously provided to Plaintiff or those she seeks to represent.

## TWENTY-FIFTH DEFENSE

### (Failure To Show Adequate Damages)

25.    Plaintiff's Complaint, and each purported cause of action alleged therein, fails to the extent that Plaintiff cannot show a specific or reliable measure of alleged damages owed to Plaintiff and/or the members of the purported class.

## TWENTY-SIXTH DEFENSE

### (No Knowledge of Violations)

26.    Plaintiff's Complaint, and each purported cause of action alleged therein, is barred to the extent that Defendants did not have actual or constructive knowledge about any purported violations, including, but not limited to, overtime or off-the-clock work allegedly performed by Plaintiff and/or those she seeks to represent. Defendants also did not have actual or constructive knowledge that Plaintiff and/or those she seeks to represent were denied any meal or rest periods, or incurred any unreimbursed business expenses. *See, e.g.*, *Brinker v. Superior Court*, 53 Cal. 4th 1004, 1051-1052 (2012); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours are not a violation").

## TWENTY-SEVENTH DEFENSE

### (Meal And Rest Periods Were Taken)

27.    Plaintiff's Complaint, and each purported cause of action alleged therein, is barred to the extent that Plaintiff and/or those she seeks to represent did, in fact, take all meal periods or rest breaks to which Plaintiff claims they were entitled throughout their employment.

## TWENTY-EIGHTH DEFENSE

### (Meal Periods Were Provided And Rest Periods Were Authorized And Permitted)

310353739v.3

28.     Plaintiff's Complaint, and each purported cause of action alleged therein, fails to state a basis upon which relief can be granted because Defendants, at all relevant times, posted the applicable Wage Order and had policies and practices that provided meal periods and authorized and permitted rest periods as required by law.

## TWENTY-NINTH DEFENSE

### (Premium Wages For Alleged Failure To Take Meal Periods Or Rest Periods)

29.     Plaintiff's Complaint, and each cause of action contained therein, is barred to the extent that Plaintiff and/or those she seeks to represent were paid a "premium wage" of an additional hour of regular pay for each day, if any, when not provided a meal period or not authorized or permitted to take a rest period.  The payment of such "premium wages" negates any additional liability for alleged meal or rest period violations.

## THIRTIETH DEFENSE

### (Failure To Show Entitlement To Waiting Time Penalties)

30.     Plaintiff's Complaint, and each and every claim contained therein, is barred to the extent that Plaintiff has failed to show that Defendants willfully, knowingly or intentionally did not pay all owed or accrued wages, overtime wages, vacation pay, sick leave, PTO, or premium wages within the time required following any discharge or voluntary resignation of employment by Plaintiff and/or those she seeks to represent.  Plaintiff, therefore, cannot pursue claims for "waiting time" penalties under California Labor Code Section 203.

## THIRTY-FIRST DEFENSE

### (Failure To Show The Lack Of Production of Personnel Or Payroll Records In Violation Of Labor Code 226)

31.     Plaintiff's Complaint, and each cause of action contained therein, is barred to the extent that Plaintiff cannot show that Defendants failed to furnish her personnel or payroll records when requested pursuant to Labor Code sections 226 and/or the applicable Wages Order.

## THIRTY-SECOND DEFENSE

### (Failure To Show Intentional Violation Of Labor Code 226)

32.     Plaintiff's Complaint, and each cause of action contained therein, is barred to the extent

7

that Plaintiff has failed to allege any facts showing that Defendants, or any officer, agent, employee, fiduciary, or other person who has the control, receipt, custody, or disposal of Plaintiff's personnel or payroll records, willfully, knowingly and intentionally violated the provisions of California Labor Code Section 226.

### THIRTY-THIRD DEFENSE

#### (No Injury)

33.     Plaintiff's claim for penalties pursuant to California Labor Code section 226 fails because she and the individuals she purports to represent have not suffered any injury as a result of the alleged statutory violations.

### THIRTY-FOURTH DEFENSE

#### (Lack of Standing to Pursue Class Claims)

34.     Plaintiff does not have standing to pursue some or all of the claims she purports to assert on behalf of others or a class.  Plaintiff additionally lacks standing to represent any individual who worked for any entity other than the Defendant she worked for, or any subsidiary, division, or location of Defendant(s) other than the one at which Plaintiff worked.

### THIRTY-FIFTH DEFENSE

#### (Lack Of Standing Under Business And Professions Code § 17200)

35.     Plaintiff's Complaint, and each purported cause of action alleged therein, fails to the extent that Plaintiff, or any person upon whose behalf Plaintiff purports to act, lacks the requisite standing to sue under Proposition 64, enacted on November 2, 2004, as California Business and Professions Code § 17204.  Under Proposition 64, any plaintiff suing for an alleged violation of the California Unfair Competition Law (the "UCL"), California Business and Professions Code § 17200, et seq., must show that he or she has suffered an injury in fact, in addition to simply alleging a loss of money or property. Since Plaintiff, or any other person on whose behalf Plaintiff purports to act, cannot allege the requisite injury, in addition to the requisite loss of money or property, Plaintiff lacks standing to sue under the UCL.

### THIRTY-SIXTH DEFENSE

#### (Unavailable Remedies Under The UCL)

8

36.     Plaintiff's Complaint fails to the extent that it seeks anything but restitution for alleged violations of the Labor Code that form the basis of the claims under the UCL.

### THIRTY-SEVENTH DEFENSE

### (Lack Of Standing For Injunctive Relief)

37.     Plaintiff's Complaint for injunctive and other equitable relief is barred because Plaintiff is not entitled to the equitable relief sought insofar as she has an adequate remedy at law and/or cannot make the requisite showing to obtain injunctive relief in a labor dispute.

### THIRTY-EIGHTH DEFENSE

### (Failure to Exhaust Contractual Remedies)

38.     Plaintiff's Complaint, and each cause of action therein, is barred to the extent Plaintiff or any individual she seeks to represent failed to exhaust the contract remedies of any applicable collective bargaining agreement.

### THIRTY-NINTH DEFENSE

### (No Liquidated Damages)

39.     Plaintiff is not entitled to liquidated damages because any acts or omissions giving rise to Plaintiff's claims were undertaken or made in good faith, and the Defendants had reasonable grounds for believing that their actions or omissions did not violate the law.

### FORTIETH DEFENSE

### (No Attorneys' Fees)

40.     Plaintiff's Complaint, and each purported cause of action therein, fails to state facts sufficient to constitute a claim for attorneys' fees against Defendants. Plaintiff's Complaint, and each purported cause of action alleged therein, also fails to the extent that Plaintiff seeks attorneys' fees and costs because Plaintiff cannot show the enforcement of an important right affecting the public interest.

### FORTY-FIRST DEFENSE

### (Inability To Pursue Attorneys' Fees Under UCL)

41.     Plaintiff's Complaint, and each purported cause of action alleged therein, fails to the extent that Plaintiff seeks attorneys' fees and costs because Plaintiff cannot show the enforcement of an important right affecting the public interest.

310353739v.3

**FORTY-SECOND DEFENSE**

**(Failure to Mitigate)**

42.     To the extent Plaintiff and/or any individual she seeks to represent failed to mitigate their damages, any damages, if awarded, should be reduced to the extent they have failed to mitigate them.

**FORTY-THIRD DEFENSE**

**(Good Faith)**

43.     Plaintiff and the putative class are not entitled to any penalty because, at all times relevant and material herein, Defendants did not knowingly, intentionally, or willfully fail to comply with any provisions of the California Labor Code or applicable wage orders, but rather acted in good faith and had reasonable grounds for believing that it did not violate the California Labor Code or the applicable wage order.

**FORTY-FOURTH DEFENSE**

**(Arbitration)**

44.     To the extent that Plaintiff and/or any putative class members have agreed to arbitrate their claims alleged in the Complaint by signing an arbitration agreement with a class action or collective action waiver, their claims are barred by their contractual agreement to arbitrate their individual claims only.

**FORTY-FIFTH DEFENSE**

**(Unreasonable and Unnecessary Expenses)**

45.     Plaintiff's expense reimbursement claims are barred in whole or in part to the extent Plaintiff and/or any individual she seeks to represent seeks reimbursement for expenses that were not incurred in direct consequence of the discharge of their duties or were not necessary or reasonable.

**FORTY-SIXTH DEFENSE**

**(No Knowledge Of Reasonable And Necessary Business Expenses)**

46.     Plaintiff's Complaint, and each purported cause of action alleged therein, fails to the extent that Plaintiff and/or some or all of the purported class he seeks to represent did not inform Defendants of or seek indemnification for reasonably and necessarily incurred business expenses.  An

310353739v.3

employer cannot be held liable for failing to indemnify an employee's necessary expenses if it does not know or have reason to know that the employee has incurred the expense.

## ADDITIONAL DEFENSES

Defendants do not presently know all of the facts and circumstances respecting the claims of Plaintiff and those she seeks to represent, and have insufficient knowledge or information upon which to form a belief as to whether there may be additional, as yet unstated defenses. Defendants have not knowingly or intentionally waived any applicable defenses and reserve the right to assert and rely on such other applicable defenses as may later become available or apparent through discovery or further investigation of Plaintiff's claims. Defendants further reserve the right to amend their answer or defenses accordingly and/or to delete defenses that they determine are not applicable during the course of discovery.

## PRAYER

WHEREFORE, Defendants pray for judgment as follows:

1.    That Plaintiff takes nothing by her Complaint;

2.    That judgment be entered in favor of Defendants and against Plaintiff on all causes of action;

3.    That the Court enter an order denying certification of any proposed class and denying any certification of the case to proceed in any other representative capacity;

4.    That Defendants be awarded reasonable attorneys' fees according to proof;

5.    That Defendants be awarded the costs of suit incurred herein; and

6.    That Defendants be awarded such other and further relief as the Court may deem appropriate.

DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED CLASS ACTION COMPLAINT

310353739v.3

DATED:  May 13, 2024

SEYFARTH SHAW LLP

By: _____

    Leo Q. Li
    Sofya Perelshteyn
    Eric E. Hill
    Ping Wang

Attorneys for Defendants
KIMPTON HOTEL & RESTAURANT
GROUP, LLC; KHRG CANARY LLC

DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED CLASS ACTION COMPLAINT

310353739v.3

1

## **PROOF OF SERVICE**

2

STATE OF CALIFORNIA                    )
                                       )   SS
3

COUNTY OF SAN FRANCISCO                )

4

     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 560 Mission Street, Suite 3100, San Francisco, California  94105.

5

On May 13, 2024, I served the within document(s):

6

**DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED CLASS ACTION COMPLAINT**

7

   ☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California, addressed as set forth below.

8

9

   ☐   by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at San Francisco, California, addressed as set forth below.

10

11

   ☒   by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

12

13

Jamie K. Serb, Esq.                    ***Attorneys for Plaintiff,***
Brandon Brouilette, Esq.               ***Waverly Latourette***
14

Zachary M. Crosner, Esq.
CROSNER LEGAL, PC
15

9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
16

jamie@crosnerlegal.com
bbrouillette@corsnerlegal.com
17

zach@crosnerlegal.com

18

19

     I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with

20

postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day

21

after date of deposit for mailing in affidavit.

22

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

     Executed on May 13, 2024, at San Francisco, California.

24

25

*Patricia Ortega*

26

_____
Patricia Ortega

27

28